DUNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **In Re:** | ) | Chapter 11, Sub V |
| **SENIOR HOME HEALTH CARE, LLC,** | ) | Case No. 26-41044 |
| **Debtor.** | ) | |

PRE-CONFIRMATIONMODIFIED CHAPTER 11 PLAN OF REORGANIZATION FOR SMALL BUSINESS DEBTOR UNDER SUBCHAPTER V DATED SEPTEMBER 18, 2026[1]

Karl J. Johnson (#0391211)
MJB Law Firm, PLLC
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
612-961-0145
karl@mjblawmn.com

*Counsel to the Debtor-in-Possession*

Dated: September 18, 2026

[1] Pursuant to Bankruptcy Rule 3016(d), this Plan conforms substantially with Official Form 425A (Plan of Reorganization for small Business Under Chapter 11).

**TABLE OF CONTENTS**

Article I. Disclosures ....5

A. Brief History of the Business Operations. ....5

B. Events Leading to Bankruptcy Filing. ....5

C. The Debtor's Assets and Liabilities. ....5

D. Plan Summary. ....7

E. Liquidation Analysis. ....8

F. Projections and Plan Feasibility. ....8

Article II. Classification of Claims and Interests ....9

Article III. Treatment of Non-Classified Claims ....10

A. Administrative Claims. ....10

B. Professional Fee Claims. ....10

C. Priority Pre-Petition Wage Claims. ....11

D. Priority Tax Claims. ....11

Article IV. Treatment of Claims and Interests under Plan ....12

A. Treatment of Claims and Interests. ....12

B. Confirmation Pursuant to section 1191(b) of the Bankruptcy Code ....14

Article V. Allowance and Disallowance of Claims ....14

A. Tardily Filed Claims. ....14

B. Prosecution of Objections to Claims ....14

C. Settlement of Disputed Claims. ....15

D. No Interest; Non-Compensatory Damages. ....15

Article VI. Executory Contracts and Unexpired Leases ....15

A. Assumption of Executory Contracts and Unexpired Leases ....15

B. The Confirmation Order will constitute an order of the Bankruptcy Court approving the following as of the Effective Date pursuant to sections 365 and 1123(b)(2) of

the Bankruptcy Code: (i) the assumption of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit C** hereto; and (ii) the rejection of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit D**. Until the conclusion of the Confirmation Hearing, the Debtor shall have the right to remove any Executory Contracts or Unexpired Leases from **Exhibit C** and include such removed Executory Contracts or Unexpired Leases on **Exhibit D**. The Debtor and a counterparty to an executory contract may agree to modify the terms of an executory contract or unexpired lease. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.....15

C. Objections to Assumption of Executory Contracts and Unexpired Leases.....16

D. Claims for Rejection Damages.....16

E. Reservation of Rights.....16

Article VII. Means for Implementation of the Plan.....16

A. Confirmation of the Plan under Section 1191(b).....16

B. Management of the Business.....17

C. Sources of Consideration for Plan Distributions.....17

D. Delivery of Distributions.....17

E. Preservation of Causes of Action.....19

F. Modification of the Plan.....19

G. Default under the Plan; Appropriate Remedies.....19

Article VIII. Discharge of Claims and Release.....20

A. Discharge.....20

B. Release.....20

C. Exculpation.....21

D. Injunction.....21

Article IX. General Provisions.....22

A. Defined Terms.....22

B. Rules of Interpretation.....27

C. Computation of Time.....27

Article X. Other Provisions....28

A. Acceptance and Rejection of Plan. ....28

B. Nonconsensual Confirmation....28

C. Immediate Binding Effect. ....28

D. Retention of Jurisdiction. ....28

E. Entire Agreement and Non-severability. ....29

F. Effect of Non-occurrence of Effective Date. ....29

G. Governing Law. ....29

H. Tax Consequences. ....29

I. Reservation of Rights....30

J. Waiver or Estoppel. ....30

K. Successors and Assigns....30

# ARTICLE I.
# DISCLOSURES

Senior Home Health Care, LLC ("Senior HHC" or the "Debtor") proposes this Plan for the resolution of the outstanding Claims against the Debtor pursuant to Subchapter V of chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article IX of this Plan. The following disclosures are provided pursuant to section 1190(1) of the Bankruptcy Code.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests**. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Notice deadlines for Plan voting and objection will be announced separately.**

*A. Brief History of the Business Operations.*

The Debtor is a Minnesota limited liability company. Since 2012, the Debtor has been in the business of providing in-home skilled nursing, physical therapy, occupational therapy, speech therapy, medical social work, CNA, and other services to our senior community. The Debtor is a Medicare-certified skilled home health agency. It operates as a regulated healthcare provider delivering intermittent medical services in patients' homes.

*B. Events Leading to Bankruptcy Filing.*

Senior HHC's financial challenges arise from the failure of a major local healthcare provider, the decisions by many payers to reduce reimbursement rates, and burdens created by merchant cash advance loans. When UCare went out of business, it failed to pay for services that had already been provided to many patients. This resulted in a loss of about 20% of expected revenue. In addition, the U.S. Department of Veterans Affairs reduced reimbursement rates by approximately 40% and Medicare reduced reimbursement rates by about 1.3% in 2025. Finally, the Debtor took out merchant cash advance ("MCA") loans with onerous terms in the hope that these revenue disruptions would be short-term but ultimately was unable to keep up with the payments.

*C. The Debtor's Assets and Liabilities.*

1. <u>*Assets*</u>

As of the Petition Date, the Debtor had assets with an estimated liquidation value of $376,239.00. The Debtor's assets included $6,285.00 of cash. In addition, the Debtor had accounts receivable with a book value of $521,077.00 and an estimated liquidation value of $364,754.00 as of the Petition Date. A more detailed liquidation analysis is discussed in Section I.E. below.

2. *Liabilities*

As of the Petition Date, the Debtor had aggregate liabilities in the estimated amount of $2,626,188.27, excluding debt owed to any insider.

a. Secured Claims

**MERCHANTS BANK**

The senior secured creditor is Merchants Bank, which holds a claim in the amount of approximately $387,719.09 as of the Petition Date. The liabilities owed to Merchants Bank arise from a promissory note and related loan documents dated June 17, 2024, which renewed and extended prior loans. Merchants Bank perfected its security interests by filing a UCC-1 financing statement with the Secretary of State of Minnesota as filing number 11386268000026 on January 30, 2020 and a continuation statement as filing number 15248245000023 on December 23, 2024. On March 13, 2026, Prepetition, Merchants assessed $2,109.52 of attorneys' fees. On April 13, 2026, Merchants Bank assessed $6,837.68 of post-petition attorneys' fees to the loan balance. On May 12, 2026, Merchants Bank assessed an additional $14,325.99 of post-petition attorneys' fees to the loan balance. On June 15, 2026, Merchants Bank assessed an additional $10,255.80. On July 20, 2026, Merchants Bank assessed an additional $10,965.00. On August 18, 2026, Merchants Bank assessed an additional $6,080.02. This brings the total balance of Merchants Bank's claim to $436,183.586 if those assessed fees are reasonable and were not capped by the value of the collateral under 11 U.S.C. § 506(b). By operation of 11 U.S.C. § 506(a), Merchants Bank has an Allowed Secured Claim of $423,585.00, which represents the Estimated Continuing Operations Value of the Debtor's assets on the Petition Date plus post-petition interest and attorneys' fees up to the value of the collateral as of the Petition Date, as described in **Exhibit A**.

**MERCEDES-BENZ FINANCIAL SERVICES**

Mercedes-Benz Financial Services holds a Purchase Money Security Interest in a 2023 Mercedes G63 SUV.

**CHANGE HEALTHCARE OPERATIONS, LLC**

Change Healthcare Operations, LLC ("Change Healthcare"), a division of Optum, has a claim under a Temporary Funding Assistance Program by which the Debtor granted a security interest in substantially all assets. Change Healthcare filed a Proof of Claim [POC No. 10] asserting only an unsecured claim.

**PIRS CAPITAL, LLC**

On or about December 10, 2024, the Debtor entered into that certain Merchant Cash Advance Agreement with PIRS Capital, LLC for funding $730,000.00 with a repayment obligation of $876,000.00. On or about September 4, 2025, PIRS filed an original UCC-1 Financing Statement as Filing Number 1576719700477. After accounting for the secured claim of Merchants Bank, no property remains to attach to the claim of PIRS Capital, LLC. Therefore, PIRS Capital, LLC's claim will be treated as unsecured by operation of 11 U.S.C. § 506.

**BIZFUND.COM**

On or about April 22, 2025, the Debtor entered into that certain Sale of Future Receipts Agreement with Bizfund.com for funding of $576,000.00 with repayment obligations of $804,000.00. On or about April 23, 2025, Bizfund.com filed an original UCC-1 Financing Statement as Filing Number 1557526800467. After accounting for the secured claim of Merchants Bank, no property remains to attach to the claim of Bizfund.com. Therefore, Bizfund.com's claim is treated as unsecured by operation of 11 U.S.C. § 506.

**CEDAR ADVANCE LLC**

On or about May 22, 2025, the Debtor entered into that certain Merchant Cash Advance Agreement with Cedar Advance LLC ("Cedar Advance") for funding of $576,000.00 with repayment obligations of $798,000.00. Upon information and belief, Cedar Advance did not file a UCC Financing Statement. After accounting for the secured claim of Merchants Bank, no property remains to attach to the claim of Cedar Advance LLC. Therefore, Cedar Advance's claim is treated as unsecured by operation of 11 U.S.C. § 506.

**NewCo Capital Group VI LLC**

On or about July 8, 2025, the Debtor entered into that certain Revenue Purchase Agreement with NewCo Capital Group VI LLC ("NCG") for funding of $250,000 with repayment obligations of $340,000.00. After accounting for the secured claim of Merchants Bank, no property remains to attach to the claim of NCG. Therefore, NCG's claim is treated as unsecured by operation of 11 U.S.C. § 506.

b. Priority Tax Claim

The Internal Revenue Service filed a Proof of claim for an estimated priority claim of $990.45. The treatment of this claim is discussed in Article III below.

c. General Unsecured Claims

In addition to the unsecured claims of various Merchant Cash Advance lenders and excluding prepetition arrears owed to executory contract counterparties, the Debtor has general unsecured liabilities in an aggregate amount of approximately $77,601.04.. In the aggregate, there are estimated unsecured claims in the approximate amount of $2,200,000.00.

*D. Plan Summary.*

1. *Claims and Interests.*

The Plan provides for the following Claims and Interests:

a. Administrative Claims.

b. Priority Tax Claims.

c. Other Priority Claims.

d. Secured Claim of Merchants Bank

e. Secured Claim of Mercedes-Benz Financial Services

f. General Unsecured Claims.

g. Interests.

2. *Treatment of Claims and Interests.*

The Plan proposes to pay Allowed Administrative Claims and Priority Tax Claims in accordance with Article III. Holders of Claims in Classes 1, 2, and 3 should refer to Article III for information regarding the precise treatment of their Claim. Holders of Class 4 General Unsecured Claims will receive Pro Rata distributions, which the Debtor has valued as approximately 15 cents on the dollar. Holders of Interests shall retain their Interests in the Debtor.

The Plan Term is four years commencing on the Effective Date.

3. *Means of Implementation.*

The Debtor will satisfy Allowed Claims under the Plan with Cash in its possession, custody, or control on the Effective Date, Cash derived from its ongoing business operations, and Cash derived from its Projected Disposable Income during the term of the Plan.

*E. Liquidation Analysis.*

Often called the "best interests" test, sections 1129(a)(7) and 1190(1)(B) of the Bankruptcy Code require that a bankruptcy court find, as a condition to confirmation, that a plan provides, with respect to each impaired class, that each Holder of a Claim or Interest in such impaired class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting Holder would receive or retain if the debtor liquidated under chapter 7.

Attached hereto as **Exhibit A** and incorporated herein by reference is a liquidation analysis (the "**Liquidation Analysis**") prepared by the Debtor. As reflected in the Liquidation Analysis, the Debtor believes that liquidation of the Debtor's business under chapter 7 of the Bankruptcy Code would result in substantial diminution in the value to be realized by Holders of Claims or Interests as compared to distributions contemplated under the Plan. In fact, unsecured creditors would receive nothing in a liquidation. Consequently, the Debtor and its management believe the Confirmation of the Plan will provide a substantially greater return to Holders of Claims or Interests than would a liquidation under chapter 7 of the Bankruptcy Code.

*F. Projections and Plan Feasibility.*

Section 1190(1)(C) of the Bankruptcy Code requires a plan filed under Subchapter V to include projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization. In addition to this requirement, section 1129(a)(11) of the Bankruptcy Code requires the bankruptcy court to find that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor of the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization). If a class of claims or interests is impaired by the plan and does not accept the plan, section 1191(b) of the Bankruptcy Code requires the bankruptcy court to additionally find that the plan is fair and equitable, with respect to such class of claims or interests as a condition to plan confirmation. To conclude that the plan is fair and equitable to each nonconsenting impaired class, the bankruptcy court must find that: (1) with respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code; (2) as of the effective date of the plan, all of the projected disposable income of the debtor to be received during the plan term, or its equivalent value, will be applied to make payments under the plan; and (3)(i) the debtor will be able to make all payments under the plan, or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan. See 11 U.S.C. § 1191(c).

To comply with section 1190(1)(C) and determine whether the Plan meets the forgoing feasibility requirements, the Debtor has analyzed its ability to meet its obligations under the Plan. As part of this analysis, the Debtor has prepared its financial projections (the "**Financial Projections**") attached hereto as **Exhibit B** and incorporated herein by reference. Based on the Financial Projections, the Debtor believes that it will be a viable operation following the Bankruptcy Case and that the Plan will meet the feasibility requirements of the Bankruptcy Code.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Except for the Claims addressed in Article III of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests in the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Merchants Bank | Impaired | Entitled to Vote |

| | | | |
|---|---|---|---|
| Class 2 | Mercedes-Benz Financial Services | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## ARTICLE III.
## TREATMENT OF NON-CLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article II.

*A. Administrative Claims.*

Subject to section B of this Article, and unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Confirmation Date.

*B. Professional Fee Claims.*

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Professional Fee Claims must be filed no later than thirty (30) days after the Confirmation Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, or order of the Bankruptcy Court. The Debtor shall pay Professional Fee Claims in Cash in the amount allowed by the Bankruptcy Court within five (5) Business Days of allowance. The Debtor estimates Professional Fee Claims through plan

confirmation will total approximately $90,000.00, depending on the level of litigation. So long as the estate exists post-confirmation, any post-confirmation fees of the Subchapter V Trustee and any professionals hired by the Subchapter V Trustee (if any) shall be subject to approval by the Court pursuant to 11 U.S.C. § 503(b). Upon Court approval of any such post-confirmation administrative expenses, the Debtors will pay such approved administrative expense in the ordinary course of business, unless otherwise agreed to by the particular claimant.

*C. Priority Pre-Petition Wage Claims*

To the extent not previously paid during the Bankruptcy Case, and unless otherwise agreed to by the Holder of an Allowed Pre-Petition Wage Claim, each Holder of an Allowed Pre-Petition Wage Claim will receive in full and final satisfaction of its Pre-Petition Wage Claim an amount of Cash equal to the amount of such Allowed Administrative Claim on or prior to the Effective Date.

*D. Priority Tax Claims.*

To the extent not previously paid during the Bankruptcy Case, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Priority Tax Claim, payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) the date such Priority Tax Claim becomes due and Allowed or as otherwise Allowed by the Bankruptcy Court and ending not later than three (3) years from the Petition Date; provided, however, that nothing in this section shall prohibit the Debtor from satisfying such Allowed Priority Tax Claim earlier than three (3) years from the Petition Date through one or more Cash payments. Until satisfied, an Allowed Priority Tax Claim shall accrue interest no earlier than the Effective Date and at the non-default rate determined under applicable non-bankruptcy law pursuant to § 511(b) of the Bankruptcy Code.

The Proof of Claim filed by the IRS includes an estimate for a tax return (Form 940 for 2026) that is not due at this time. The Debtor will pay the required federal tax deposits to ensure no balance is owed. If a balance is owed, the Debtor will file the tax return and pay the balance on or before the due date of the tax return.

The Debtor will pay the IRS's priority claim, in full, with compound interest at the Internal Revenue Code rate the month the plan is confirmed, and in equal monthly amounts, beginning on the last day of the month after the Plan has been confirmed, due on the last day of each month thereafter (or the next business day if the last day falls on a Saturday, Sunday, or federal holiday), and ending no later than March 30, 2029.

If the Debtor fails to timely make a payment due on any administrative, secured, priority, or general unsecured claim of the IRS and it is not cured within 10 days of the mailing of a written notice of default by the IRS to the Debtor and to the current attorney for the Debtor, the Debtor will have defaulted on the Plan and the IRS may, through any of its agencies and without further order of this Court, exercise all rights and remedies applicable under nonbankruptcy law for the collection of all claims of the IRS, in their entirety and with any interest or penalties then accrued. The IRS shall not be required to seek modification of the automatic stay to collect on the claims of the IRS.

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

*A. Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1. *Class 1 – Merchants Bank*

   a. *Classification*: Class 1 consists of the claim of Merchants Bank.

   b. *Allowance*: Pursuant to section 506(a)(1) of the Bankruptcy Code, Merchants Bank shall have an Allowed Secured Claim in the amount of $423,585.00.

   c. *Treatment*: Merchants Bank shall receive, in satisfaction of its Allowed Secured Claim: (1) monthly payments of $20,000.00 due on the last day of each month starting the month after the Court enters an order confirming this Plan and until Merchants Bank's Allowed Secured Claim is paid in full with interest at the rate of 9.5% per annum calculated on an actual/360 basis, paid by ACH, which is based on a compromise between the non-default contract rate of interest of U.S. Bank prime plus 1.00% and the default rate. Notwithstanding the foregoing, Merchants Bank may receive such other less favorable treatment as may be agreed upon by Merchants Bank and the Debtor.

   d. *Lien Retention*: Merchants Bank shall retain its existing Lien on its collateral until the payment in full of its Allowed Secured Claim. Upon the satisfaction of the Allowed Secured Claim, (i) all credit agreements, notes, mortgages, security agreements, invoices, contracts, agreements, and any other documents, instruments and judgments relating to the Debtor evidencing the Class 1 Claim, together with any and all Liens securing the same, shall be canceled, discharged and released without further act or action by the holder of the Allowed Secured Claim under any applicable agreement, law, regulation, order or rule; (ii) the obligations of the Debtor thereunder shall be deemed cancelled, discharged, and released; and (iii) all of the right, title and interest of Merchants Bank under any Liens, security interests or judgments relating to the Debtor, including any rights to any collateral thereunder, will revert to the Debtor. Nothing in the Plan or confirmation order will impair, release, cancel, enjoin, or otherwise affect Merchants' rights against any non-debtor or non-estate property absent

Merchants' express written consent. The Debtor may file a UCC-3 terminationstatement to reflect the satisfaction of the Class 1 Claim relating to the Debtor and property of the Estate to the extent permissible under applicable nonbankruptcy law.

e. *Voting*: Class 1 is impaired under the Plan and Merchants Bank is entitled to vote to accept or reject the Plan.

2. <u>*Class 2—Mercedes-Benz Financial Services*</u>

a. *Classification*: Class 2 consists of the claim of Mercedes-Benz Financial Services.

b. *Allowance*: Mercedes-Benz Financial Services shall have an Allowed Secured Claim in the amount of $132,068.00.

c. *Treatment*: Mercedes-Benz Financial Services shall not receive any payments under the plan. Instead, the Debtor's sole member, Jeylani Hashi, will take over the loan and will make payments pursuant to the Loan Agreements between the Debtor and Mercedes-Benz Financial Services.

d. Lien Retention: Mercedes-Benz Financial Services shall retain its existing Lien on its collateral until the payment in full of its Allowed Secured Claim.

e. *Voting*: Class 2 is unimpaired under the Plan and is deemed to accept the Plan.

3. <u>*Class 3 – General Unsecured Claims*</u>

a. *Classification*: Class 3 consists of Holders of General Unsecured Claims.

b. *Treatment*: each Holder of a General Unsecured Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim's Pro Rata share of Projected Disposable Income in the aggregate amount of $325,000.00, which should result in a recovery of approximately 14.8% of the Allowed amount of a Holder's General Unsecured Claim, according to the Financial Projections set forth on Exhibit B. After payment of the allowed secured claim of Merchants Bank, there is j during the first 24 months of the plan. Commencing on the Effective Date and concluding no later than the third anniversary of the Effective Date, the Debtor shall distribute the Projected Disposable Income to each Holder semi-annually. Notwithstanding the foregoing, a Holder may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor. Payments on account of General Unsecured claims are anticipated to be paid as follows:

| | |
|---|---|
| September 30, 2029 | $75,000.00 |

| | |
|---|---|
| March 30, 2030 | $75,000.00 |
| September 30, 2030 | $175,000.00 |
| **Total** | **$325,000.00** |

c. *Voting*: Class 3 is Impaired under the Plan and Holders of General Unsecured Claims shall be entitled to vote to accept or reject the Plan.

4. <u>*Class 4 – Interests*</u>

a. *Classification*: Class 4 consists of the Holder of Interests in the Debtor.

b. *Treatment*: On the Effective Date, each Holder shall retain their Interests in the Debtor in the same number of Units that existed on the Petition Date.

c. *Voting:* Class 4 is Unimpaired under the Plan. The Holders of Interests in Class 4 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders are not entitled to vote to accept or reject the Plan.

*B. Confirmation Pursuant to section 1191(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.A of the Plan. If any Class of Claims or Interests rejects the Plan, the Debtor shall seek Confirmation of the Plan pursuant to section 1191(b) of the Bankruptcy Code.

## ARTICLE V.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

*A. Tardily Filed Claims.*

Except as otherwise provided herein, all Proofs of Claim filed after the Proof of Claim Bar Date or Governmental Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, without the need for any objection by the Debtor or the Subchapter V Trustee, or any further notice to, or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, on and after the Effective Date, the Debtor may negotiate and settle any Claims, including Claims for which a Proof of Claim has been filed, without further notice to or approval of the Bankruptcy Court or any other party.

*B. Prosecution of Objections to Claims.*

Any objections to Claims or Interests, other than Claims of a Governmental Unit, shall be served and filed on or before the 30th day after the Effective Date or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Holder

(the "**Claims Objection Deadline**"). Any objections to Claims of a Governmental Unit, shall be served and filed on or before the 30th day after the deadline for Governmental Units to file Proofs of Claim pursuant to Bankruptcy Rule 3002(c)(1) or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Governmental Unit (the "**Governmental Claims Objection Deadline**"). All Claims and Interests that the Debtor or Subchapter V Trustee have not objected to by the Claims Objection Deadline or Governmental Claims Objection Deadline, as applicable, shall be deemed Allowed.

*C. Settlement of Disputed Claims.*

The Debtor or the Subchapter V Trustee, as applicable, shall have the power and authority to settle and compromise a Disputed Claim subject to compliance with Bankruptcy Rule 9019 and approval by the Bankruptcy Court.

*D. No Interest; Non-Compensatory Damages.*

Unless otherwise specifically provided for in the Plan or by Final Order, post-petition interest or penalty shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest or penalty accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest or penalty shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption of Executory Contracts and Unexpired Leases.*

*B. The Confirmation Order will constitute an order of the Bankruptcy Court approving the following as of the Effective Date pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code: (i) the assumption of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit C** hereto; and (ii) the rejection of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit D**. Until the conclusion of the Confirmation Hearing, the Debtor shall have the right to remove any Executory Contracts or Unexpired Leases from **Exhibit C** and include such removed Executory Contracts or Unexpired Leases on **Exhibit D**. The Debtor and a counterparty to an executory contract may agree to modify the terms of an executory contract or unexpired lease. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Debtor shall pay an amount sufficient to cure any default as is required under 11 U.S.C. § 365(b) (the "Cures"), if any, in the amounts and by the deadlines set forth on **Exhibit C**. Any contract that is not listed on **Exhibits C** or **D** shall be deemed assumed without the requirement of the Debtor to pay any Cure.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor to a counterparty must be filed with the Bankruptcy Court on or before the Voting Deadline. Any such request, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing. Any such request that is not timely filed shall be disallowed and forever

barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor without the need for any objection by the Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor of the Cure; provided that nothing herein shall prevent the Debtor from paying the Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Debtor may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article VI shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

*C. Objections to Assumption of Executory Contracts and Unexpired Leases.*

Any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, including any objection to the proposed Cure, must be filed with the Bankruptcy Court by the Voting Deadline. Any such objection, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of an Executory Contract or Unexpired Lease will be deemed to have consented to such assumption. The Debtor may settle any such objections without any further notice to, or action, order or approval of, the Bankruptcy Court.

*D. Claims for Rejection Damages*

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected, if any, shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date.

*E. Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor shall have thirty (30) days following entry of a Final Order such dispute to alter its treatment of such contract or lease under the Plan.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A. Confirmation of the Plan under Section 1191(b).*

The Debtor requests that the Bankruptcy Court confirm the Plan under section 1191(a) of the Bankruptcy Code. But, if any Impaired Class does not accept the Plan pursuant to section 1126 of the Bankruptcy Code, then the Debtor requests that the Bankruptcy Court confirm the Plan undersection 1191(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

*B. Management of the Business.*

Except as provided in any agreement approved by the Bankruptcy Court, Jeylani Hashi and Marian Hussein shall operate and manage the business of the Debtor after the Effective Date. Jeylani Hashi and Marian Hussein are each an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code. In exchange for his services as Manager, Jeylani Hashi will receive $148,000.00 in annual compensation from the Debtor payable biweekly in the amount of $5,692.31 and the same employee benefits that are available to other employees of the Debtor. In exchange for her services as Director of Operations, Marian Hussein will receive $115,000.00 in annual compensation from the Debtor payable biweekly in the amount of $4,423.08 and the same employee benefits that are available to other employees of the Debtor.

*C. Sources of Consideration for Plan Distributions.*

The Debtor shall use Cash on hand, working capital, and Cash from ongoing business operations to fund distributions to certain Holders of Allowed Claims, consistent with the terms of the Plan. Pursuant to section 1190(2) of the Bankruptcy Code, the Plan provides for the submission of all or such portion of the future earnings of the Debtor as is necessary for the execution of the Plan.

Over the course of this bankruptcy case, the financial performance of the Debtor has declined. The first few months, the Debtor outperformed projections. However, this turns out to be the result of one-time infusions of cash that was held under Pre-Petition lien holds. Since then, the Debtor has underperformed projections. Or, more accurately, the Debtor has consistently underperformed projections if you exclude one-time releases of funds that were frozen Pre-Petition. Consequently, the Debtor has had to revise its projections to reflect this lower financial performance.

The first plan filed by the Debtor provided for distributions to general unsecured creditors totaling $350,000.00 over three years. In an effort to stay close to this level of distributions, the Debtor has voluntarily extended the term of the Plan to four years to achieve distributions of $325,000.00 to general unsecured creditors.

*D. Delivery of Distributions.*

1. <u>*Disbursing Agent.*</u>

Notwithstanding sections 1191(b) and 1194 of the Bankruptcy Code, the Debtor and not the Subchapter V Trustee shall act as the Disbursing Agent under the Plan unless the court orders otherwise.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursements claim (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Debtor.

2. *Delivery of Distributions.*

Unless otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's record as of the date of any such distribution; *provided* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

3. *Time Bar to Negotiate Distribution Checks.*

Holders of Allowed Claims shall have ninety (90) days from the date of issuance of a distribution to negotiate a check issued by the Disbursing Agent. If a Holder fails to negotiate a disbursement check within ninety (90) days, the Disbursing Agent shall have the right to void the check, and any current and/or future claims of such Holder shall be treated as Unclaimed Distributions (defined below).

4. *Undeliverable Distributions.*

If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Debtor and the Disbursing Agent shall be authorized to treat such Holder's current and future distribution on account of its Allowed Claim as Unclaimed Distributions (defined below).

The Disbursing Agent shall have no obligation to make more than two (2) attempts to obtain the Holder's current address. Any distribution that remains undeliverable after six (6) months of the date the distribution was first attempted shall become an Unclaimed Distribution (defined below).

5. *Unclaimed Distributions; Reversion.*

Any distribution made by the Disbursing Agent to a Holder of an Allowed Claim that is undeliverable for more than six (6) months or has not been negotiated within ninety (90) days from the date of issuance of the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall revest with the Debtor. Upon such revesting, (i) the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary, and (ii) such Holder shall not be entitled to receive any further distributions on account of the Allowed Claim relating to such Unclaimed Distribution.

*E. Preservation of Causes of Action.*

In accordance with § 1123(b)(3), Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor (or any successor), in its sole and absolute discretion, shall have the right to bring, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing). Debtor (or any successor), in the exercise of its sole discretion, may pursue such Retained Actions so long as it is in the best interest of Debtor's Estate (or any successor holding such rights of action). Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees or other monies or receivables due. The Plan shall not be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor shall retain "Avoidance Actions" under Chapter 5 of the Bankruptcy Code. Net proceeds of any Avoidance Actions, if any, shall be distributed first to priority unsecured creditors following the priority scheme of 11 U.S.C. § 507 and then to non-priority unsecured creditors.

*F. Modification of the Plan.*

The Debtor may modify the Plan subject to the requirements and limitations of section 1193 of the Bankruptcy Code. Consistent with Article VII.A, the Debtor may modify the Plan to the extent that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

*G. Default under the Plan; Appropriate Remedies.*

If the Plan has been confirmed under section 1191(a) of the Bankruptcy Code and the Debtor fails to timely perform its obligations under the Plan with respect to one or more Holders of Allowed Claims then, notwithstanding the injunction set forth in Article VIII.D, such Holders shall be entitled to pursue any rights and remedies that such Holders may have under applicable law, including but not limited to foreclosure of Liens, and bringing an action against the Debtor for breaching its obligations under the Plan and seeking monetary and/or injunctive relief; provided that the Debtor shall have ninety (90) days to cure any default with respect to its obligations to Class 3 before any Holders of Allowed Claims in such Class may be allowed to pursue any rights or remedies that such Holders may have under applicable law.

In addition to the foregoing, if the Plan has been confirmed under section 1191(b) of the Bankruptcy Code, and the Debtor fails to timely perform its obligations under the Plan with respect

to one or more Impaired Classes that has not accepted the Plan, then: (i) the Debtor shall have twenty (10) days from written notice of such default to cure any monetary default and thirty (30) days from written notice to cure any nonmonetary default with respect to such Impaired Classes; (ii) if the Debtor is unable to cure such default, it shall, no later than forty-five (45) days from the expiration of the time allotted in clause (i), file a modified plan supported by a revised projected disposable income analysis, which plan shall propose treatment of the Impaired Classes consistent with section 1191; and (iii) the Debtor shall move for the Bankruptcy Court to approve the Plan, as modified, after notice and a hearing. If the Debtor fails to comply with this paragraph after failing to perform its obligations under the Plan with respect to one or more Impaired Classes or fails to obtain a Final Order approving modifications to the Plan that are sufficient to ensure that Holders of Allowed Claims in each Impaired Class are not discriminated against unfairly and receive fair and equitable treatment, then any party in interest may move to convert the Bankruptcy Case to one under chapter 7.

## ARTICLE VIII.
## DISCHARGE OF CLAIMS AND RELEASE

*A. Discharge.*

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of the Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code. The Debtor will not be discharged from any debt imposed by the Plan or to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to section 1141(d)(A) of the Bankruptcy Code and all Administrative Claims upon completion of all payments due during the Plan Term and the Bankruptcy Court's entry of an order of discharge pursuant to section 1192 of the Bankruptcy Code; *provided* that the order of discharge shall not apply to any debt for which the last payment is due after the Plan Term has completed.

*B. Release.*

Upon entry of the order of discharge, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan: (i) each Holder of a Claim that votes to accept the Plan; and (ii) to the fullest extent permissible under applicable law, each Entity that has held, holds, or may hold a Claim or at any time was a creditor of the Debtor and that does not vote on the Plan or votes to reject the Plan, in each case will be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, rights, Causes of Action, and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place

on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan that such Entity has, had or may have against the Debtor, the Estate, and the Debtor's assets.

*C. Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, filing, or termination of the Plan and related transactions, created or entered into since the Petition Date, the pursuit of Confirmation, the pursuit of Substantial Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that constitutes actual fraud, willful misconduct, or gross negligence, but in all respects such Entities may assert the affirmative defense that they reasonably relied upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*D. Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims are permanently enjoined, to the fullest extent permissible under applicable law, from and after the Effective Date, from taking any of the following actions against the Debtor: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor or its property or assets on account of or in connection with or with respect to such Claims; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property or assets on account of or in connection with or with respect to such Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or its property or assets on account of or in connection with or with respect to such Claims unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date; and (5) commencing or continuing in any manner any actions or other proceeding of any kind on account of or in connection with or with respect to any such Claim released or settled pursuant to the Plan. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, any and all affirmative defenses of setoff and/or recoupment of Merchants Bank and Change Healthcare are hereby preserved for purposes of future litigation.

# ARTICLE IX.
# GENERAL PROVISIONS

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. **"Administrative Claim"** means a Claim for costs and expenses of administration of the Estate under section 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the business of the Debtor; and (b) Allowed Professional Fee Claims.

2. **"Allowed"** means, as to a Claim or Interest, proof of which was timely and properly filed or, if no proof of Claim or Interest was filed, which has been or hereafter is listed in the Schedules, as liquidated in an amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (b) an objection has been interposed and such Claim or Interest has been allowed, in whole or in part, by a Final Order and/or by the agreement of the holder of such Claim or Interest. With respect to an Administrative Claim, "Allowed" shall mean any Administrative Claim, or any portion thereof, with respect to which both (a) a timely and proper request for payment has been made to the extent required by the Plan, the Confirmation Order, or by any other order of the Bankruptcy Court, and (b) such Administrative Claim is allowed by the Bankruptcy Court. Allowed Claims shall not include Disputed Claims or Disallowed Claims.

3. **"Avoidance Action"** means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, or 551, of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

4. **"Ballot"** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject the Plan.

5. **"Bankruptcy Case"** means the Debtor's bankruptcy case pending in the Bankruptcy Court, Case No. 26-41044.

6. **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532.

7. **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Minnesota.

8. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated under section 2075 of title 28 of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court.

9. **"Proof of Claim Bar Date"** means July 16 2026, the deadline for Holders of Claims (other than Governmental Units) to file a Proof of Claim against the Estate in the Bankruptcy Case.

10. **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

11. **"Cash"** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

12. **"Cause of Action"** means any action, claim, cross-claim, third-party claim, cause of action, chose in action, controversy, dispute, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foresee or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

13. **"Claim"** means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

14. **"Class"** means a class of Claims or Interests as set forth in Article II hereof pursuant to section 1122(a) of the Bankruptcy Code.

15. **"Confirmation"** means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Bankruptcy Case.

16. **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

17. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1191 of the Bankruptcy Code, as such hearing may be continued from time to time.

18. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1191 of the Bankruptcy Code, together with any supplementary exhibits, appendices, and related documents.

19. **"Cure"** means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's default under an Executory Contract or an Unexpired Lease assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

20. **"Debtor"** has the meaning set forth in the preamble to the Plan and shall include the reorganized Debtor after the Effective Date of the Plan, as applicable.

21. **"Disallowed"** means as to a Claim, or any portion thereof, that: (a) has been disallowed or expunged by a Final Order; (b) has been listed by the Debtor in the Schedules in the amount of "$0.00" or as unliquidated in amount, disputed, contingent, or unknown and for which no Proof of Claim has been filed prior to the applicable deadline; or (c) unless otherwise specified herein or by Final Order, any interest, fees, and charges, and any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or any other claims or obligations that do not compensate for actual losses.

22. **"Disbursing Agent"** means, as applicable, the Debtor or any Entity appointed to make or to facilitate distributions in accordance with the Plan.

23. **"Disposable Income"** shall have the meaning set forth in section 1191(d) of the Bankruptcy Code.

24. **"Disputed"** means as to a Claim, or any portion thereof, that: (a) is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order; (d) if held by an Entity that is a defendant in a pending Avoidance Action, or has failed to pay or turn over property as required by section 502(d) of the Bankruptcy Code; or (e) is otherwise disputed by the Debtor or the Subchapter V Trustee after the Effective Date, in accordance with applicable law.

25. **"Effective Date"** means the date that is the first Business Day: (i) following the date that is fourteen (14) days after the Confirmation Date; or (ii) if a stay of the Confirmation Order is in effect, the first Business Day after the date on which the stay of the Confirmation Order expires or is otherwise terminated. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

26. **"Entity"** means any entity, as defined in section 101(15) of the Bankruptcy Code.

27. **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to sections 541 and 1186 of the Bankruptcy Code.

28. **"Exculpated Parties"** means, collectively, and in each case in its capacity as such: (i) the Debtor; (ii) the Subchapter V Trustee; and (iii)each current director, manager, officer, employee, trustee, advisory board member, attorney, accountant, representative, and other professional and advisor who was employed during the Bankruptcy Case with respect to clauses (i) through (iii).

29. **"Executory Contract"** means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

30. **"Final Decree"** means the decree contemplated pursuant to Bankruptcy Rule 3022.

31. **"Final Order"** means an order of judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal, seek certiorari, or move for a new trial, stay, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending; or (b) if any appeal, certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule, may be filed relating to such order or judgment, shall not cause such order or judgment not to be a Final Order.

32. **"General Unsecured Claim"** means any Claim that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, or (e) a Claim under Classes 1, 2, and 4.

33. **"Government Bar Date"** means September 28, 2026, the deadline for a Governmental Unit to file a Proof of Claim against the Estate in the Bankruptcy Case.

34. **"Governmental Unit"** means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

35. **"Impaired"** means, with respect to any Class of Claims or Interests, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

36. **"Interests"** means any equity or membership interest in the Debtor, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, any other right to purchase or otherwise receive any ownership interest in the Debtor, or other interest or related right to payment or compensation based upon such interest, existing on or before the Effective Date.

37. **"Lien"** means a lien as defined in section 101(37) of the Bankruptcy Code.

38. **"Liquidation Analysis"** shall have the meaning set forth in Article I.D. The Debtor's Liquidation Analysis is attached to the Plan as **Exhibit A**.

39. **"Person"** has the meaning set forth in section 101(14) of the Bankruptcy Code.

40. **"Petition Date"** means the date on which the Debtor commenced the Bankruptcy Case.

41. **"Plan"** means this plan of reorganization, including all exhibits, supplements, appendices, and schedules, in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

42. **"Plan Term"** means the duration of time from the Effective Date through the fourth anniversary of the Effective Date.

43. **"Priority Tax Claims"** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, including a Secured Claim of a Governmental Unit which would otherwise meet the description of an unsecured Claim under section 507(a)(8), but for the secured status of the Claim.

44. **"Pro Rata"** means, unless otherwise specified, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

45. **"Proof of Claim"** means a proof of Claim filed against the Debtor in the Bankruptcy Case.

46. **"Professional"** means: (a) an Entity employed pursuant to sections 327, 363, or 1103 of the Bankruptcy Code; (b) the Subchapter V Trustee; and (c) an Entity awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

47. **"Professional Fee Claim"** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, and 503(b) of the Bankruptcy Code.

48. **"Projected Disposable Income"** shall have the meaning set forth in Article I.E.

49. **"Reinstate"** means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

50. **"Retained Action"** means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person (including insiders), including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any persons for failure to pay for services provided or rendered by Debtor, (iii) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, overpayments and refunds, and (iv) all Avoidance Actions.

51. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as they may be supplemented or amended from time to time.

52. **"Secured Claim"** means any Claim that is secured by a valid, perfected and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

53. **"Solicitation"** means that solicitation of votes in connection with the Plan pursuant to section 1126 of the Bankruptcy Code.

54. **"Solicitation Procedures Order"** means the order entered by the Bankruptcy Court setting the date for the Confirmation Hearing, and establishing deadlines for submitting Ballots, objecting to the Plan and the proposed assumption of Executory Contracts and Unexpired Leases, among other relief.

55. **"Subchapter V Trustee"** shall refer to Mary Sieling, appointed pursuant to section 1183(a) of the Bankruptcy Code in the Bankruptcy Case.

56. **"Unclaimed Distribution"** shall have the meaning provided in Article VII.C.

57. **"Unexpired Lease"** means a lease to which the Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

58. **"Unimpaired"** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

59. **"Voting Deadline"** means the deadline for submitting Ballots established in the Solicitation Procedures Order.

*B. Rules of Interpretation.*

For the purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) any immaterial effectuating provisions may be interpreted by the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (10) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a

transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## ARTICLE X.
## OTHER PROVISIONS

*A. Acceptance and Rejection of Plan.*

Pursuant to section 1126 of the Bankruptcy Code, an Impaired Class shall have accepted the Plan if (i) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan, and (ii) the Holders of more than one-half (1/2) in number of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan (in both instances, acceptance or rejection by such Holders shall be made in good faith). If necessary and applicable for Confirmation of the Plan, the Debtor reserves the right to request that the Bankruptcy Court address whether the Plan may be deemed accepted or rejected by any Impaired Class for which no Holder has returned a Ballot voting to accept or reject the Plan.

*B. Nonconsensual Confirmation.*

The Bankruptcy Court shall confirm the Plan under section 1191(a) of the Bankruptcy Code if all of the requirements of section 1129(a) of the Bankruptcy Code are met, including, among other things making a finding that all Impaired Classes have voted to accept the Plan.

If one or more Impaired Class votes to reject the Plan, the Bankruptcy Court shall confirm the Plan upon a finding that the Debtor has satisfied the requirements of section 1191(b).

*C. Immediate Binding Effect.*

Upon the occurrence of the Effective Date, the terms of the Plan, and any documents supplemental to the Plan, shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

*D. Retention of Jurisdiction.*

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising out of, and related to, the Plan, the Confirmation Order, and the Bankruptcy Case to the fullest extent permitted by law, including but not limited to: (i) determining the allowance of compensation and expenses of Professionals; (ii) hearing and deciding any and all adversary proceedings, applications, and contested matters; (iii) determining issues or disputes relating to the assumption of Executory Contracts and Unexpired Leases and any claims related thereto; (iv) determining disputes as to classification or allowance of Claims or Interests; (v) resolving any dispute between or among any of the parties to

the Bankruptcy Case; (vi) ruling on any modification of the Plan proposed under section 1193; (vii) determining other such matters as may be set forth in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; (viii) entering a final decree closing the Bankruptcy Case; (ix) correcting any defect, cure any omission or reconciling any inconsistency in this Plan or Confirmation Order; and (x) issuing such orders or injunctions as may be necessary to execute, implement, or consummate the Plan, or taking such other actions as may be necessary to restrain interference by any Entity with consummation or enforcement of the Plan.

*E. Entire Agreement and Non-severability.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtor or, prior to the termination of his services, the Subchapter V Trustee's consent; and (ii) non-severable and mutually dependent.

*F. Effect of Non-occurrence of Effective Date.*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgment, offer or undertaking by the Debtor.

*G. Governing Law.*

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to conflict-of-laws principles.

*H. Tax Consequences.*

The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto. There can be no assurance that the Internal Revenue Service or any state or local taxing

authorities will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

FOR THE FOREGOING REASONS, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE, AND LOCAL) TO THEM OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR EQUITY HOLDER, NOR IS THE DEBTOR RENDERING ANY FORM OR LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.

*I. Reservation of Rights.*

The Debtor reserves the right to, among other things: (i) contest the right of the Holder of any Claim to vote on the Plan, or designate the vote of the Holder of any Claim; (ii) contest the right of the Holder of any Claim to receive distributions under the Plan; (iii) contest the validity of a creditor's Lien or security interest; (iv) seek to subordinate any Claim for inequitable conduct or otherwise; and (v) to pre-pay all or a portion of an Allowed Claim. Except as otherwise provided, no assets shall be deemed abandoned and no defense, set-off, counterclaim, or right of recoupment of the Debtor shall be deemed waived, released, or compromised.

*J. Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor, or any other Entity, if such agreement was not disclosed in the Plan or any documents supplementary to the Plan prior to the Confirmation Date.

*K. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, success or assign, affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

Senior Home Health Care, LLC

Dated: September 18, 2026

By: */s/ Jeylani Hashi*__________
Name: Jeylani Hashi
Title: Manager

# EXHIBIT A

# LIQUIDATION ANALYSIS

Senior Home Health Care LLC
Case 26-41044
Liquidation Analysis
June 25, 2026
Filing Date March 30, 2026

| | Book Value As of Filing Date | Estimated Liquidation Value | Estimated Continuing Operations Value |
|---|---|---|---|
| Cash | $6,285 | $6,285 | $6,285 |
| Accounts Receivable | $521,077 | $364,754 | $390,808 |
| Prepaid Expenses | $1,745 | $0 | $0 |
| Office Equipment - Fully Depreciated Original Cost $18,933 | $0 | $1,900 | $1,900 |
| Furniture & Fixtures - Fully Depreciated Original Cost $10,796 | $0 | $1,100 | $1,100 |
| Medical Supply Inventory | $0 | $200 | $200 |
| Security Deposits | $4,991 | $2,000 | $4,991 |
| Total Estimated Liquidation Value | | $376,239 | $405,284 |

NOTES ON VALUATION:

Accounts receivable Estimated Liquidation Value was calculated based upon an assumed collection rate of 70% of the value of accounts receivable at the date of filing. All of the insurance companies pay less than 100% of the actual amount of the accounts receivable. SHHC generally looks to collect approximately 75% of the face value of the accounts receivable. However, if the company were liquidated and all employees were terminated, there would be nobody left to actively collect on those accounts receivable and therefore the collection rate would decrease, most likely lower than 70%.

Prepaid Expenses were determined to have no liquidation value as there would be no way to recover any of those costs.

All of the Office Equipment and Furniture & Fixures are fully depreciated. The estimated Liquidation was calculated at approximately 10% of the Original Cost.

The Medical Supply Inventory is expensed as incurred and has no book value. However, there would be some nominal value to the supplies on hand on the date of filing.

The security deposit is for the office space. There is some potential that a portion of this could be recovered in liquidation is the space is able to be leased.

The Estimated Ongoing Operations Value is shown for determining Allowed Secured Claims.

# EXHIBIT B

# FINANCIAL PROJECTIONS

Senior Home Health Care
Case Number 26-41044
Plan Projections
September 17, 2026

| | | 2026 October | November | December | 2027 January | February | March | April | May | June | July | August | September | Year 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Collections | | $355,000 | $360,000 | $365,000 | $365,000 | $365,000 | $365,000 | $365,000 | $365,000 | $365,000 | $365,000 | $365,000 | $365,000 | $4,365,000 |
| Payroll - Net Pay | | $190,000 | $190,000 | $190,000 | $190,000 | $190,000 | $190,000 | $190,000 | $190,000 | $190,000 | $190,000 | $190,000 | $190,000 | $2,280,000 |
| Officer Salaries | | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $263,000 |
| Payroll Taxes and Processing | | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $75,000 | $900,000 |
| Commercial Insurance | | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $66,000 |
| Utilities | | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $5,700 |
| Rent | | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $67,668 |
| Computer and Internet Expenses | | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $18,000 |
| Telecommunications / HotSpots | | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $50,784 |
| Software / EMR | | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $108,456 |
| Subcontractors | | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $54,000 |
| Recruiting and Hiring | | $3,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $58,500 |
| Office Expense - Bank Charges | | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $32,796 |
| Medical Supplies | | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $66,000 |
| Health Insurance Employer Contribution | | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $42,000 |
| Health Insurance Broker Fees | | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $13,800 |
| Legal and Accounting / Trustee | | $30,000 | $30,000 | $25,000 | $10,000 | $7,000 | $10,000 | $7,000 | $11,000 | $10,000 | $7,000 | $7,000 | $7,000 | $161,000 |
| Reserve For Income Taxes | | $0 | $0 | $0 | $0 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $12,000 |
| Cash Outflows | | $364,184 | $365,684 | $360,684 | $345,684 | $344,184 | $347,184 | $344,184 | $348,184 | $347,184 | $344,184 | $344,184 | $344,184 | $4,199,704 |
| Net Cash Inflows (Outflows) | | -$9,184 | -$5,684 | $4,316 | $19,316 | $20,816 | $17,816 | $20,816 | $16,816 | $17,816 | $20,816 | $20,816 | $20,816 | $165,296 |
| Capital Expenditures | | | | | | $20,000 | | | | | | | | $20,000 |
| Cash Balance | $100,000 | $53,316 | $30,133 | $16,949 | $18,765 | $2,082 | $2,398 | $5,714 | $5,031 | $5,347 | $8,663 | $11,980 | $15,296 | |
| Payments Merchants Bank | | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $210,000 |
| Payment to NetSmart / Employee PTO Claims | | $20,000 | $0 | | $0 | | | | | | | | $0 | $20,000 |
| Net Cash Inflows (Outflows) | | -$46,684 | -$23,184 | -$13,184 | $1,816 | -$16,684 | $316 | $3,316 | -$684 | $316 | $3,316 | $3,316 | $3,316 | -$84,704 |
| Merchant Loan Balance Including Fees | $423,585 | $409,438 | $395,180 | $380,808 | $366,323 | $351,723 | $337,008 | $322,176 | $307,226 | $292,158 | $276,971 | $261,664 | $246,235 | |
| Merchant Interest at 9.5% | | $3,353 | $3,241 | $3,129 | $3,015 | $2,900 | $2,784 | $2,668 | $2,551 | $2,432 | $2,313 | $2,193 | $2,072 | |

Senior Home Health Care
Case Number 26-41044
Plan Projections
September 17, 2026

| | | 2027 | | | 2028 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | October | November | December | January | February | March | April | May | June | July | August | September | Year 2 |
| Cash Collections | | $370,000 | $370,000 | $370,000 | $375,000 | $375,000 | $375,000 | $375,000 | $375,000 | $375,000 | $375,000 | $375,000 | $375,000 | $4,485,000 |
| Payroll - Net Pay | | $195,000 | $195,000 | $195,000 | $195,000 | $195,000 | $195,000 | $195,000 | $195,000 | $195,000 | $195,000 | $195,000 | $195,000 | $2,340,000 |
| Officer Salaries | | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $263,000 |
| Payroll Taxes and Processing | | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $936,000 |
| Commercial Insurance | | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $72,000 |
| Utilities | | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $5,700 |
| Rent | | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $67,668 |
| Computer and Internet Expenses | | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $18,000 |
| Telecommunications / HotSpots | | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $50,784 |
| Software / EMR | | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $108,456 |
| Subcontractors | | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $54,000 |
| Recruiting and Hiring | | $3,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $58,500 |
| Office Expense - Bank Charges | | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $32,796 |
| Medical Supplies | | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $66,000 |
| Health Insurance Employer Contribution | | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $42,000 |
| Health Insurance Broker Fees | | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $13,800 |
| Legal and Accounting / Trustee | | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $84,000 |
| Reserve For Income Taxes | | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $24,000 |
| Cash Outflows | | $351,684 | $353,184 | $353,184 | $353,184 | $353,184 | $353,184 | $353,184 | $353,184 | $353,184 | $353,184 | $353,184 | $353,184 | $4,236,704 |
| Net Cash Inflows (Outflows) | | $18,316 | $16,816 | $16,816 | $21,816 | $21,816 | $21,816 | $21,816 | $21,816 | $21,816 | $21,816 | $21,816 | $21,816 | $248,296 |
| Capital Expenditures | | | | | | $20,000 | | | | | | | | $20,000 |
| Cash Balance | $15,296 | $16,112 | $15,429 | $14,745 | $19,061 | $3,378 | $7,694 | $12,010 | $16,327 | $20,643 | $24,959 | $29,276 | $33,592 | |
| Payments Merchants Bank | | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $17,500 | $210,000 |
| Payment To Unsecured | | | | | | | | | | | | | $0 | $0 |
| Net Cash Inflows (Outflows) | | $816 | -$684 | -$684 | $4,316 | -$15,684 | $4,316 | $4,316 | $4,316 | $4,316 | $4,316 | $4,316 | $4,316 | $18,296 |
| Merchant Loan Balance Including Fees | $246,235 | $230,685 | $215,011 | $199,213 | $183,290 | $167,241 | $151,065 | $134,761 | $118,328 | $101,765 | $85,071 | $68,244 | $51,284 | |
| Merchant Interest at 9.5% | | $1,949 | $1,826 | $1,702 | $1,577 | $1,451 | $1,324 | $1,196 | $1,067 | $937 | $806 | $673 | $540 | |

Senior Home Health Care
Case Number 26-41044
Plan Projections
September 17, 2026

| | | 2028 | | | 2029 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | October | November | December | January | February | March | April | May | June | July | August | September | Year 3 |
| Cash Collections | | $375,000 | $375,000 | $375,000 | $375,000 | $380,000 | $380,000 | $380,000 | $380,000 | $380,000 | $380,000 | $380,000 | $380,000 | $4,540,000 |
| Payroll - Net Pay | | $195,000 | $195,000 | $195,000 | $195,000 | $197,500 | $197,500 | $197,500 | $197,500 | $197,500 | $197,500 | $197,500 | $197,500 | $2,360,000 |
| Officer Salaries | | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $263,000 |
| Payroll Taxes and Processing | | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $78,000 | $936,000 |
| Commercial Insurance | | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $6,500 | $78,000 |
| Utilities | | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $5,700 |
| Rent | | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $67,668 |
| Computer and Internet Expenses | | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $18,000 |
| Telecommunications / HotSpots | | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $50,784 |
| Software / EMR | | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $108,456 |
| Subcontractors | | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $54,000 |
| Recruiting and Hiring | | $3,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $58,500 |
| Office Expense - Bank Charges | | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $32,796 |
| Medical Supplies | | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $66,000 |
| Health Insurance Employer Contribution | | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $42,000 |
| Health Insurance Broker Fees | | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $13,800 |
| Legal and Accounting / Trustee | | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $84,000 |
| Reserve For Income Taxes | | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $36,000 |
| Cash Outflows | | $353,184 | $354,684 | $354,684 | $354,684 | $357,184 | $357,184 | $357,184 | $357,184 | $357,184 | $357,184 | $357,184 | $357,184 | $4,274,704 |
| Net Cash Inflows (Outflows) | | $21,816 | $20,316 | $20,316 | $20,316 | $22,816 | $22,816 | $22,816 | $22,816 | $22,816 | $22,816 | $22,816 | $22,816 | $265,296 |
| Capital Expenditures | | | | | | $20,000 | | | | | | | | $20,000 |
| Cash Balance | $33,592 | $37,908 | $40,725 | $43,946 | $64,262 | $67,079 | $89,895 | $112,711 | $135,528 | $158,344 | $181,160 | $203,977 | $151,793 | |
| Payments Merchants Bank | | $17,500 | $17,500 | $17,095 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $52,095 |
| Payment To Unsecured | | | | | | | $0 | | | | | | $75,000 | $75,000 |
| Net Cash Inflows (Outflows) | | $4,316 | $2,816 | $3,221 | $20,316 | $2,816 | $22,816 | $22,816 | $22,816 | $22,816 | $22,816 | $22,816 | -$52,184 | $118,201 |
| Merchant Loan Balance Including Fees | $51,284 | $34,190 | $16,961 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |
| Merchant Interest at 9.5% | | $406 | $271 | $134 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |

Senior Home Health Care
Case Number 26-41044
Plan Projections
September 17, 2026

| | | 2029 | | | 2030 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | October | November | December | January | February | March | April | May | June | July | August | September | Year 4 |
| Cash Collections | | $380,000 | $380,000 | $380,000 | $385,000 | $385,000 | $385,000 | $385,000 | $390,000 | $390,000 | $390,000 | $390,000 | $390,000 | $4,630,000 |
| Payroll - Net Pay | | $200,000 | $200,000 | $200,000 | $200,000 | $200,000 | $202,500 | $202,500 | $202,500 | $202,500 | $202,500 | $202,500 | $202,500 | $2,417,500 |
| Officer Salaries | | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $21,917 | $263,000 |
| Payroll Taxes and Processing | | $79,000 | $79,000 | $79,000 | $79,000 | $79,000 | $79,000 | $80,000 | $80,000 | $80,000 | $80,000 | $80,000 | $80,000 | $954,000 |
| Commercial Insurance | | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $84,000 |
| Utilities | | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $475 | $5,700 |
| Rent | | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $5,639 | $67,668 |
| Computer and Internet Expenses | | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $18,000 |
| Telecommunications / HotSpots | | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $4,232 | $50,784 |
| Software / EMR | | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $9,038 | $108,456 |
| Subcontractors | | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $4,500 | $54,000 |
| Recruiting and Hiring | | $3,500 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $58,500 |
| Office Expense - Bank Charges | | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $2,733 | $32,796 |
| Medical Supplies | | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $5,500 | $66,000 |
| Health Insurance Employer Contribution | | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $3,500 | $42,000 |
| Health Insurance Broker Fees | | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $1,150 | $13,800 |
| Legal and Accounting / Trustee | | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $7,000 | $84,000 |
| Reserve For Income Taxes | | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $4,000 | $48,000 |
| Cash Outflows | | $360,684 | $362,184 | $362,184 | $362,184 | $362,184 | $364,684 | $365,684 | $365,684 | $365,684 | $365,684 | $365,684 | $365,684 | $4,368,204 |
| Net Cash Inflows (Outflows) | | $19,316 | $17,816 | $17,816 | $22,816 | $22,816 | $20,316 | $19,316 | $24,316 | $24,316 | $24,316 | $24,316 | $24,316 | $261,796 |
| Capital Expenditures | | | | | | $20,000 | | | | | | | | $20,000 |
| Cash Balance | $151,793 | $171,109 | $188,926 | $206,742 | $229,558 | $232,375 | $177,691 | $197,007 | $221,324 | $245,640 | $269,956 | $294,273 | $143,589 | |
| Payments Merchants Bank | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Payment To Unsecured | | | | | | | $75,000 | | | | | | $175,000 | $250,000 |
| Net Cash Inflows (Outflows) | | $19,316 | $17,816 | $17,816 | $22,816 | $2,816 | -$54,684 | $19,316 | $24,316 | $24,316 | $24,316 | $24,316 | -$150,684 | -$8,204 |

**EXHIBIT C**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED**

| Contract | Counter-Party | Cure Amount | Date of Payment |
|---|---|---|---|
| Commercial Lease | Metro Parkway Associates, LLP | $0.00 | N/A |
| Commercial Lease | Miracle Mile LLC | $0.00 | N/A |
| Subscription for Electronic Medical Record Services | NetSmart, Inc. | $14,293.16 | Fifteen (15) days after the Effective Date |

# EXHIBIT D

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

Commercial Lease with Northstar Properties of Saint Cloud, LLC

DUNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **In Re:**<br>**SENIOR HOME HEALTH CARE, LLC,**<br>**Debtor.** | )<br>)<br>)<br>)<br>) | Chapter 11, Sub V<br>Case No. 26-41044 |

PRE-CONFIRMATIONMODIFIED CHAPTER 11 PLAN OF REORGANIZATION FOR SMALL BUSINESS DEBTOR UNDER SUBCHAPTER V DATED SEPTEMBER __, 2026[1]

Karl J. Johnson (#0391211)
MJB Law Firm, PLLC
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
612-961-0145
karl@mjblawmn.com

Formatted: Tab stops: 4.8", Left + 6.5", Right

*Counsel to the Debtor-in-Possession*

Dated: ~~June~~ September __ ~~26~~, 2026

[1] Pursuant to Bankruptcy Rule 3016(d), this Plan conforms substantially with Official Form 425A (Plan of Reorganization for small Business Under Chapter 11).

**TABLE OF CONTENTS**

Article I. Disclosures ....5

A. Brief History of the Business Operations. ....5

B. Events Leading to Bankruptcy Filing. ....5

C. The Debtor's Assets and Liabilities. ....5

D. Plan Summary. ....7

E. Liquidation Analysis. ....8

F. Projections and Plan Feasibility. ....9~~8~~

Article II. Classification of Claims and Interests ....9

Article III. Treatment of Non-Classified Claims ....10

A. Administrative Claims. ....10

B. Professional Fee Claims. ....10

C. Priority Pre-Petition Wage Claims. ....11

D. Priority Tax Claims. ....11

Article IV. Treatment of Claims and Interests under Plan ....12

A. Treatment of Claims and Interests. ....12

B. Confirmation Pursuant to section 1191(b) of the Bankruptcy Code ....14

Article V. Allowance and Disallowance of Claims ....14

A. Tardily Filed Claims. ....14

B. Prosecution of Objections to Claims ....15~~15~~

C. Settlement of Disputed Claims. ....15

D. No Interest; Non-Compensatory Damages. ....15

Article VI. Executory Contracts and Unexpired Leases ....15

A. Assumption of Executory Contracts and Unexpired Leases ....15

B. The Confirmation Order will constitute an order of the Bankruptcy Court approving the following as of the Effective Date pursuant to sections 365 and 1123(b)(2) of

the Bankruptcy Code: (i) the assumption of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit C** hereto; and (ii) the rejection of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit D**. Until the conclusion of the Confirmation Hearing, the Debtor shall have the right to remove any Executory Contracts or Unexpired Leases from **Exhibit C** and include such removed Executory Contracts or Unexpired Leases on **Exhibit D**. The Debtor and a counterparty to an executory contract may agree to modify the terms of an executory contract or unexpired lease. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ....... 15

C. Objections to Assumption of Executory Contracts and Unexpired Leases. ....... 16

D. Claims for Rejection Damages ....... 16

E. Reservation of Rights. ....... 16

Article VII. Means for Implementation of the Plan ....... 17~~17~~

A. Confirmation of the Plan under Section 1191(b). ....... 17~~17~~

B. Management of the Business. ....... 17

C. Sources of Consideration for Plan Distributions. ....... 17

D. Delivery of Distributions. ....... 18~~17~~

E. Preservation of Causes of Action. ....... 19~~19~~

F. Modification of the Plan. ....... 19

G. Default under the Plan; Appropriate Remedies. ....... 19

Article VIII. Discharge of Claims and Release ....... 20

A. Discharge. ....... 20

B. Release. ....... 20

C. Exculpation. ....... 21~~20~~

D. Injunction. ....... 21

Article IX. General Provisions ....... 22~~21~~

A. Defined Terms. ....... 22~~21~~

B. Rules of Interpretation. ....... 27

C. Computation of Time. ....... 28~~27~~

Article X. Other Provisions.......................................................................................................2827

A. Acceptance and Rejection of Plan. ...........................................................................2827

B. Nonconsensual Confirmation.......................................................................................28

C. Immediate Binding Effect.............................................................................................28

D. Retention of Jurisdiction. ...........................................................................................2928

E. Entire Agreement and Non-severability. ...................................................................2928

F. Effect of Non-occurrence of Effective Date. ................................................................29

G. Governing Law. .........................................................................................................3029

H. Tax Consequences. ....................................................................................................3029

I. Reservation of Rights......................................................................................................30

J. Waiver or Estoppel. .......................................................................................................30

K. Successors and Assigns.................................................................................................30

**ARTICLE I.**
**DISCLOSURES**

Senior Home Health Care, LLC ("Senior HHC" or the "Debtor") proposes this Plan for the resolution of the outstanding Claims against the Debtor pursuant to Subchapter V of chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article IX of this Plan. The following disclosures are provided pursuant to section 1190(1) of the Bankruptcy Code.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests**. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Notice deadlines for Plan voting and objection will be announced separately.**

*A. Brief History of the Business Operations.*

The Debtor is a Minnesota limited liability company. Since 2012, the Debtor has been in the business of providing in-home skilled nursing, physical therapy, occupational therapy, speech therapy, medical social work, CNA, and other services to our senior community. The Debtor is a Medicare-certified skilled home health agency. It operates as a regulated healthcare provider delivering intermittent medical services in patients' homes.

*B. Events Leading to Bankruptcy Filing.*

Senior HHC's financial challenges arise from the failure of a major local healthcare provider, the decisions by many payers to reduce reimbursement rates, and burdens created by merchant cash advance loans. When UCare went out of business, it failed to pay for services that had already been provided to many patients. This resulted in a loss of about 20% of expected revenue. In addition, the U.S. Department of Veterans Affairs reduced reimbursement rates by approximately 40% and Medicare reduced reimbursement rates by about 1.3% in 2025. Finally, the Debtor took out merchant cash advance ("MCA") loans with onerous terms in the hope that these revenue disruptions would be short-term but ultimately was unable to keep up with the payments.

*C. The Debtor's Assets and Liabilities.*

1. *Assets*

As of the Petition Date, the Debtor had assets with an estimated liquidation value of $376,239.00. The Debtor's assets included $6,285.00 of cash. In addition, the Debtor had accounts receivable with a book value of $521,077.00 and an estimated liquidation value of $364,754.00 as of the Petition Date. A more detailed liquidation analysis is discussed in Section I.E. below.

2. *Liabilities*

As of the Petition Date, the Debtor had aggregate liabilities in the estimated amount of $2,626,188.27, excluding debt owed to any insider.

a. Secured Claims

**MERCHANTS BANK**

The senior secured creditor is Merchants Bank, which holds a claim in the amount of approximately $387,719.09 as of the Petition Date. The liabilities owed to Merchants Bank arise from a promissory note and related loan documents dated June 17, 2024, which renewjed and extended prior loans. Merchants Bank perfected its security interests by filing a UCC-1 financing statement with the Secretary of State of Minnesota as filing number 11386268000026 on January 30, 2020 and a continuation statement as filing number 15248245000023 on December 23, 2024. On March 13, 2026, Prepetition, Merchants assessed $2,109.52 of attorneys' fees. On April 13, 2026, Merchants Bank assessed $6,837.68 of post-petition attorneys' fees to the loan balance. On May 12, 2026, Merchants Bank assessed an additional $14,325.99 of post-petition attorneys' fees to the loan balance. On June 15, 2026, Merchants Bank assessed an additional $10,255.80. On July 20, 2026, Merchants Bank assessed an additional $10,965.00. On August 18, 2026, Merchants Bank assessed an additional $6,080.02. This brings the total balance of Merchants Bank's claim to ~~$419,138.5~~$436,183.586 if those assessed fees are reasonable and were not capped by the value of the collateral under 11 U.S.C. § 506(b). By operation of 11 U.S.C. § 506(a), Merchants Bank has an Allowed Secured Claim of $~~405,284.00~~423,585.00, which represents the Estimated Continuing Operations Value of the Debtor's assets on the Petition Date plus post-petition interest and attorneys' fees up to the value of the collateral as of the Petition Date, as described in **Exhibit A**.

**MERCEDES-BENZ FINANCIAL SERVICES**

Mercedes-Benz Financial Services holds a Purchase Money Security Interest in a 2023 Mercedes G63 SUV.

**CHANGE HEALTHCARE OPERATIONS, LLC**

Change Healthcare Operations, LLC ("Change Healthcare"), a division of Optum, has a claim under a Temporary Funding Assistance Program by which the Debtor granted a security interest in substantially all assets. Change Healthcare filed a Proof of Claim [POC No. 10] asserting only an unsecured claim.

**PIRS CAPITAL, LLC**

On or about December 10, 2024, the Debtor entered into that certain Merchant Cash Advance Agreement with PIRS Capital, LLC for funding $730,000.00 with a repayment obligation of $876,000.00. On or about September 4, 2025, PIRS filed an original UCC-1 Financing Statement as Filing Number 1576719700477. After accounting for the secured claim of Merchants

Bank, no property remains to attach to the claim of PIRS Capital, LLC. Therefore, PIRS Capital, LLC's claim will be treated as unsecured by operation of 11 U.S.C. § 506.

**BIZFUND.COM**

On or about April 22, 2025, the Debtor entered into that certain Sale of Future Receipts Agreement with Bizfund.com for funding of $576,000.00 with repayment obligations of $804,000.00. On or about April 23, 2025, Bizfund.com filed an original UCC-1 Financing Statement as Filing Number 1557526800467. After accounting for the secured claim of Merchants Bank, no property remains to attach to the claim of Bizfund.com. Therefore, Bizfund.com's claim is treated as unsecured by operation of 11 U.S.C. § 506.

**CEDAR ADVANCE LLC**

On or about May 22, 2025, the Debtor entered into that certain Merchant Cash Advance Agreement with Cedar Advance LLC ("Cedar Advance") for funding of $576,000.00 with repayment obligations of $798,000.00. Upon information and belief, Cedar Advance did not file a UCC Financing Statement. After accounting for the secured claim of Merchants Bank, no property remains to attach to the claim of Cedar Advance LLC. Therefore, Cedar Advance's claim is treated as unsecured by operation of 11 U.S.C. § 506.

**NewCo Capital Group VI LLC**

On or about July 8, 2025, the Debtor entered into that certain Revenue Purchase Agreement with NewCo Capital Group VI LLC ("NCG") for funding of $250,000 with repayment obligations of $340,000.00. After accounting for the secured claim of Merchants Bank, no property remains to attach to the claim of NCG. Therefore, NCG's claim is treated as unsecured by operation of 11 U.S.C. § 506.

b. Priority Tax Claim

The Internal Revenue Service filed a Proof of claim for an estimated priority claim of $990.45. The treatment of this claim is discussed in Article III below.

c. General Unsecured Claims

In addition to the unsecured claims of various Merchant Cash Advance lenders and excluding prepetition arrears owed to executory contract counterparties, the Debtor has general unsecured liabilities in an aggregate amount of approximately $77,601.04.. In the aggregate, there are estimated unsecured claims in the approximate amount of $2,200,000.00.

*D. Plan Summary.*

1. <u>*Claims and Interests.*</u>

The Plan provides for the following Claims and Interests:

a. Administrative Claims.

b. Priority Tax Claims.

c. Other Priority Claims.

d. Secured Claim of Merchants Bank

e. Secured Claim of Mercedes-Benz Financial Services

f. General Unsecured Claims.

g. Interests.

2. *Treatment of Claims and Interests.*

The Plan proposes to pay Allowed Administrative Claims and Priority Tax Claims in accordance with Article III. Holders of Claims in Classes 1, 2, and 3 should refer to Article III for information regarding the precise treatment of their Claim. Holders of Class 4 General Unsecured Claims will receive Pro Rata distributions, which the Debtor has valued as approximately ~~16~~ 15 cents on the dollar. Holders of Interests shall retain their Interests in the Debtor.

The Plan Term is ~~three~~ four years commencing on the Effective Date.

3. *Means of Implementation.*

The Debtor will satisfy Allowed Claims under the Plan with Cash in its possession, custody, or control on the Effective Date, Cash derived from its ongoing business operations, and Cash derived from its Projected Disposable Income during the term of the Plan.

*E. Liquidation Analysis.*

Often called the "best interests" test, sections 1129(a)(7) and 1190(1)(B) of the Bankruptcy Code require that a bankruptcy court find, as a condition to confirmation, that a plan provides, with respect to each impaired class, that each Holder of a Claim or Interest in such impaired class either (a) has accepted the plan or (b) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting Holder would receive or retain if the debtor liquidated under chapter 7.

Attached hereto as **Exhibit A** and incorporated herein by reference is a liquidation analysis (the "**Liquidation Analysis**") prepared by the Debtor. As reflected in the Liquidation Analysis, the Debtor believes that liquidation of the Debtor's business under chapter 7 of the Bankruptcy Code would result in substantial diminution in the value to be realized by Holders of Claims or Interests as compared to distributions contemplated under the Plan. In fact, unsecured creditors would receive nothing in a liquidation. Consequently, the Debtor and its management believe the

Confirmation of the Plan will provide a substantially greater return to Holders of Claims or Interests than would a liquidation under chapter 7 of the Bankruptcy Code.

*F. Projections and Plan Feasibility.*

Section 1190(1)(C) of the Bankruptcy Code requires a plan filed under Subchapter V to include projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization. In addition to this requirement, section 1129(a)(11) of the Bankruptcy Code requires the bankruptcy court to find that confirmation of a plan of reorganization is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor of the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization). If a class of claims or interests is impaired by the plan and does not accept the plan, section 1191(b) of the Bankruptcy Code requires the bankruptcy court to additionally find that the plan is fair and equitable, with respect to such class of claims or interests as a condition to plan confirmation. To conclude that the plan is fair and equitable to each nonconsenting impaired class, the bankruptcy court must find that: (1) with respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code; (2) as of the effective date of the plan, all of the projected disposable income of the debtor to be received during the plan term, or its equivalent value, will be applied to make payments under the plan; and (3)(i) the debtor will be able to make all payments under the plan, or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan. See 11 U.S.C. § 1191(c).

To comply with section 1190(1)(C) and determine whether the Plan meets the forgoing feasibility requirements, the Debtor has analyzed its ability to meet its obligations under the Plan. As part of this analysis, the Debtor has prepared its financial projections (the "**Financial Projections**") attached hereto as **<u>Exhibit B</u>** and incorporated herein by reference. Based on the Financial Projections, the Debtor believes that it will be a viable operation following the Bankruptcy Case and that the Plan will meet the feasibility requirements of the Bankruptcy Code.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Except for the Claims addressed in Article III of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests in the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Merchants Bank | Impaired | Entitled to Vote |
| Class 2 | Mercedes-Benz Financial Services | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## ARTICLE III.
## TREATMENT OF NON-CLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article II.

*A. Administrative Claims.*

Subject to section B of this Article, and unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Administrative Claims must be filed no later than thirty (30) days after the Confirmation Date.

*B. Professional Fee Claims.*

To the extent not previously paid during the Bankruptcy Case, all requests for payment of Professional Fee Claims must be filed no later than thirty (30) days after the Confirmation Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims

after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, or order of the Bankruptcy Court. The Debtor shall pay Professional Fee Claims in Cash in the amount allowed by the Bankruptcy Court within five (5) Business Days of allowance. The Debtor estimates Professional Fee Claims through plan confirmation will total approximately $90,000.00, depending on the level of litigation. So long as the estate exists post-confirmation, any post-confirmation fees of the Subchapter V Trustee and any professionals hired by the Subchapter V Trustee (if any) shall be subject to approval by the Court pursuant to 11 U.S.C. § 503(b). Upon Court approval of any such post-confirmation administrative expenses, the Debtors will pay such approved administrative expense in the ordinary course of business, unless otherwise agreed to by the particular claimant.

*C. Priority Pre-Petition Wage Claims*

To the extent not previously paid during the Bankruptcy Case, and unless otherwise agreed to by the Holder of an Allowed Pre-Petition Wage Claim, each Holder of an Allowed Pre-Petition Wage Claim will receive in full and final satisfaction of its Pre-Petition Wage Claim an amount of Cash equal to the amount of such Allowed Administrative Claim on or prior to the Effective Date.

*D. Priority Tax Claims.*

To the extent not previously paid during the Bankruptcy Case, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Claim, an amount of Cash equal to the amount of such Allowed Priority Tax Claim, payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) the date such Priority Tax Claim becomes due and Allowed or as otherwise Allowed by the Bankruptcy Court and ending not later than three (3) years from the Petition Date; provided, however, that nothing in this section shall prohibit the Debtor from satisfying such Allowed Priority Tax Claim earlier than three (3) years from the Petition Date through one or more Cash payments. Until satisfied, an Allowed Priority Tax Claim shall accrue interest no earlier than the Effective Date and at the non-default rate determined under applicable non-bankruptcy law pursuant to § 511(b) of the Bankruptcy Code.

The Proof of Claim filed by the IRS includes an estimate for a tax return (Form 940 for 2026) that is not due at this time. The Debtor will pay the required federal tax deposits to ensure no balance is owed. If a balance is owed, the Debtor will file the tax return and pay the balance on or before the due date of the tax return.

The Debtor will pay the IRS's priority claim, in full, with compound interest at the Internal Revenue Code rate the month the plan is confirmed, and in equal monthly amounts, beginning on the last day of the month after the Plan has been confirmed, due on the last day of each month thereafter (or the next business day if the last day falls on a Saturday, Sunday, or federal holiday), and ending no later than March 30, 2029.

If the Debtor fails to timely make a payment due on any administrative, secured, priority, or general unsecured claim of the IRS and it is not cured within 10 days of the mailing of a written notice of default by the IRS to the Debtor and to the current attorney for the Debtor, the Debtor will have defaulted on the Plan and the IRS may, through any of its agencies and without further

order of this Court, exercise all rights and remedies applicable under nonbankruptcy law for the collection of all claims of the IRS, in their entirety and with any interest or penalties then accrued. The IRS shall not be required to seek modification of the automatic stay to collect on the claims of the IRS.

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN

*A. Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1. *Class 1 – Merchants Bank*

a. *Classification*: Class 1 consists of the claim of Merchants Bank.

b. *Allowance*: Pursuant to section 506(a)(1) of the Bankruptcy Code, Merchants Bank shall have an Allowed Secured Claim in the amount of ~~$405,284.00.~~ $423,585.00.

c. *Treatment*: Merchants Bank shall receive, in satisfaction of its Allowed Secured Claim: (1) monthly payments of $20,000.00 due on the last day of each month starting ~~October 2026~~ the month after the Court enters an order confirming this Plan and until Merchants Bank's Allowed Secured Claim is paid in full with interest at the rate of ~~7.75~~9.5% per annum calculated on an actual/360 basis, paid by ACH, which is based on a compromise between the non-default contract rate of interest of U.S. Bank prime plus 1.00% and the default rate. Notwithstanding the foregoing, Merchants Bank may receive such other less favorable treatment as may be agreed upon by Merchants Bank and the Debtor.

d. *Lien Retention*: Merchants Bank shall retain its existing Lien on its collateral until the payment in full of its Allowed Secured Claim. Upon the satisfaction of the Allowed Secured Claim, (i) all credit agreements, notes, mortgages, security agreements, invoices, contracts, agreements, and any other documents, instruments and judgments relating to the Debtor evidencing the Class 1 Claim, together with any and all Liens securing the same, shall be canceled, discharged and released without further act or action by the holder of the Allowed Secured Claim under any applicable agreement, law, regulation, order or rule; (ii) the obligations of the Debtor thereunder shall be deemed cancelled, discharged, and released; and (iii) all of the right, title and interest of Merchants Bank under any Liens, security

interests or judgments relating to the Debtor, including any rights to any collateral thereunder, will revert to the Debtor. Nothing in the Plan or confirmation order will impair, release, cancel, enjoin, or otherwise affect Merchants' rights against any non-debtor or non-estate property absent Merchants' express written consent. The Debtor may file a ~~UCC-5~~UCC-3 termination ~~financing~~ statement to reflect the satisfaction of the Class 1 Claim relating to the Debtor and property of the Estate to the extent permissible under applicable nonbankruptcy law.

e. *Voting*: Class 1 is impaired under the Plan and Merchants Bank is entitled to vote to accept or reject the Plan.

2. *Class 2—Mercedes-Benz Financial Services*

a. *Classification*: Class 2 consists of the claim of Mercedes-Benz Financial Services.

b. *Allowance*: Mercedes-Benz Financial Services shall have an Allowed Secured Claim in the amount of $132,068.00.

c. *Treatment*: Mercedes-Benz Financial Services shall not receive any payments under the plan. Instead, the Debtor's sole member, Jeylani Hashi, will take over the loan and will make payments pursuant to the Loan Agreements between the Debtor and Mercedes-Benz Financial Services.

d. Lien Retention: Mercedes-Benz Financial Services shall retain its existing Lien on its collateral until the payment in full of its Allowed Secured Claim.

e. *Voting*: Class 2 is unimpaired under the Plan and is deemed to accept the Plan.

3. *Class 3 – General Unsecured Claims*

a. *Classification*: Class 3 consists of Holders of General Unsecured Claims.

b. *Treatment*: ~~On the Effective Date,~~ each Holder of a General Unsecured Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim's Pro Rata share of Projected Disposable Income in the aggregate amount of ~~$350,000.00~~$325,000.00, which should result in a recovery of approximately ~~16%~~14.8% of the Allowed amount of a Holder's General Unsecured Claim, according to the Financial Projections set forth on Exhibit B. After payment of the allowed secured claim of Merchants Bank, there is ~~no projected disposable income~~j during the first 24 months of the plan. Commencing on the Effective Date and concluding no later than the third anniversary of the Effective Date, the Debtor shall distribute the Projected Disposable Income to each Holder semi-annually. Notwithstanding the foregoing, a Holder may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

Payments on account of General Unsecured claims are anticipated to be paid as follows:

| | |
|---|---|
| ~~August 30, 2028~~September 30, 2029 | $~~50~~75,000.00 |
| ~~February 28~~March 30, ~~2029~~2030 | ~~$100,000.00~~$75,000.00 |
| ~~August 30, 2029~~September 30, 2030 | ~~$200,000.00~~$175,000.00 |
| **Total** | **~~$350,000.00~~$325,000.00** |

c. *Voting*: Class 3 is Impaired under the Plan and Holders of General Unsecured Claims shall be entitled to vote to accept or reject the Plan.

4. *Class 4 – Interests*

a. *Classification*: Class 4 consists of the Holder of Interests in the Debtor.

b. *Treatment*: On the Effective Date, each Holder shall retain their Interests in the Debtor in the same number of Units that existed on the Petition Date.

c. *Voting:* Class 4 is Unimpaired under the Plan. The Holders of Interests in Class 4 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders are not entitled to vote to accept or reject the Plan.

*B. Confirmation Pursuant to section 1191(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.A of the Plan. If any Class of Claims or Interests rejects the Plan, the Debtor shall seek Confirmation of the Plan pursuant to section 1191(b) of the Bankruptcy Code.

## ARTICLE V.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

*A. Tardily Filed Claims.*

Except as otherwise provided herein, all Proofs of Claim filed after the Proof of Claim Bar Date or Governmental Bar Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, without the need for any objection by the Debtor or the Subchapter V Trustee, or any further notice to, or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, on and after the Effective Date, the Debtor

may negotiate and settle any Claims, including Claims for which a Proof of Claim has been filed, without further notice to or approval of the Bankruptcy Court or any other party.

*B. Prosecution of Objections to Claims.*

Any objections to Claims or Interests, other than Claims of a Governmental Unit, shall be served and filed on or before the 30th day after the Effective Date or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Holder (the "**Claims Objection Deadline**"). Any objections to Claims of a Governmental Unit, shall be served and filed on or before the 30th day after the deadline for Governmental Units to file Proofs of Claim pursuant to Bankruptcy Rule 3002(c)(1) or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Governmental Unit (the "**Governmental Claims Objection Deadline**"). All Claims and Interests that the Debtor or Subchapter V Trustee have not objected to by the Claims Objection Deadline or Governmental Claims Objection Deadline, as applicable, shall be deemed Allowed.

*C. Settlement of Disputed Claims.*

The Debtor or the Subchapter V Trustee, as applicable, shall have the power and authority to settle and compromise a Disputed Claim subject to compliance with Bankruptcy Rule 9019 and approval by the Bankruptcy Court.

*D. No Interest; Non-Compensatory Damages.*

Unless otherwise specifically provided for in the Plan or by Final Order, post-petition interest or penalty shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest or penalty accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest or penalty shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption of Executory Contracts and Unexpired Leases.*

*B. The Confirmation Order will constitute an order of the Bankruptcy Court approving the following as of the Effective Date pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code: (i) the assumption of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit C** hereto; and (ii) the rejection of the Executory Contracts and Unexpired Leases as so set forth on **Exhibit D**. Until the conclusion of the Confirmation Hearing, the Debtor shall have the right to remove any Executory Contracts or Unexpired Leases from **Exhibit C** and include such removed Executory Contracts or Unexpired Leases on **Exhibit D**. The Debtor and a counterparty to an executory contract may agree to modify the terms of an executory contract or unexpired lease. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Debtor shall pay an amount sufficient to cure any default as is required under 11 U.S.C. § 365(b) (the "Cures"), if any, in the amounts and by the deadlines set forth on **Exhibit C**. Any

contract that is not listed on **Exhibits C** or **D** shall be deemed assumed without the requirement of the Debtor to pay any Cure.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor to a counterparty must be filed with the Bankruptcy Court on or before the Voting Deadline. Any such request, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor without the need for any objection by the Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor of the Cure; provided that nothing herein shall prevent the Debtor from paying the Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Debtor may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article VI shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

*C. Objections to Assumption of Executory Contracts and Unexpired Leases.*

Any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, including any objection to the proposed Cure, must be filed with the Bankruptcy Court by the Voting Deadline. Any such objection, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of an Executory Contract or Unexpired Lease will be deemed to have consented to such assumption. The Debtor may settle any such objections without any further notice to, or action, order or approval of, the Bankruptcy Court.

*D. Claims for Rejection Damages*

Pursuant to section 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected, if any, shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date.

*E. Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory

or unexpired at the time of assumption or rejection, the Debtor shall have thirty (30) days following entry of a Final Order such dispute to alter its treatment of such contract or lease under the Plan.

**ARTICLE VII.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

*A. Confirmation of the Plan under Section 1191(b).*

The Debtor requests that the Bankruptcy Court confirm the Plan under section 1191(a) of the Bankruptcy Code. But, if any Impaired Class does not accept the Plan pursuant to section 1126 of the Bankruptcy Code, then the Debtor requests that the Bankruptcy Court confirm the Plan undersection 1191(b) of the Bankruptcy Code. The Debtor reserves the right to modify the Plan to the extent, if any, that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

*B. Management of the Business.*

Except as provided in any agreement approved by the Bankruptcy Court, Jeylani Hashi and Marian Hussein shall operate and manage the business of the Debtor after the Effective Date. Jeylani Hashi and Marian Hussein are each an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code. In exchange for his services as Manager, Jeylani Hashi will receive $148,000.00 in annual compensation from the Debtor payable biweekly in the amount of $5,692.31 and the same employee benefits that are available to other employees of the Debtor. In exchange for her services as Director of Operations, Marian Hussein will receive $115,000.00 in annual compensation from the Debtor payable biweekly in the amount of $4,423.08 and the same employee benefits that are available to other employees of the Debtor.

*C. Sources of Consideration for Plan Distributions.*

The Debtor shall use Cash on hand, working capital, and Cash from ongoing business operations to fund distributions to certain Holders of Allowed Claims, consistent with the terms of the Plan. Pursuant to section 1190(2) of the Bankruptcy Code, the Plan provides for the submission of all or such portion of the future earnings of the Debtor as is necessary for the execution of the Plan.

Over the course of this bankruptcy case, the financial performance of the Debtor has declined. The first few months, the Debtor outperformed projections. However, this turns out to be the result of one-time infusions of cash that was held under Pre-Petition lien holds. Since then, the Debtor has underperformed projections. Or, more accurately, the Debtor has consistently underperformed projections if you exclude one-time releases of funds that were frozen Pre-Petition. Consequently, the Debtor has had to revise its projections to reflect this lower financial performance.

The first plan filed by the Debtor provided for distributions to general unsecured creditors totaling $350,000.00 over three years. In an effort to stay close to this level of distributions, the Debtor has voluntarily extended the term of the Plan to four years to achieve distributions of $325,000.00 to general unsecured creditors.

*D. Delivery of Distributions.*

1. *Disbursing Agent.*

Notwithstanding sections 1191(b) and 1194 of the Bankruptcy Code, the Debtor and not the Subchapter V Trustee shall act as the Disbursing Agent under the Plan unless the court orders otherwise.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursements claim (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Debtor.

2. *Delivery of Distributions.*

Unless otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's record as of the date of any such distribution; *provided* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

3. *Time Bar to Negotiate Distribution Checks.*

Holders of Allowed Claims shall have ninety (90) days from the date of issuance of a distribution to negotiate a check issued by the Disbursing Agent. If a Holder fails to negotiate a disbursement check within ninety (90) days, the Disbursing Agent shall have the right to void the check, and any current and/or future claims of such Holder shall be treated as Unclaimed Distributions (defined below).

**Formatted:** Indent: First line: 0.56"

4. *Undeliverable Distributions.*

If any distribution to a Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. If, despite reasonable effort, the Disbursing Agent is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Debtor and the Disbursing Agent shall be authorized to treat such

Holder's current and future distribution on account of its Allowed Claim as Unclaimed Distributions (defined below).

The Disbursing Agent shall have no obligation to make more than two (2) attempts to obtain the Holder's current address. Any distribution that remains undeliverable after six (6) months of the date the distribution was first attempted shall become an Unclaimed Distribution (defined below).

5. *Unclaimed Distributions; Reversion.*

Any distribution made by the Disbursing Agent to a Holder of an Allowed Claim that is undeliverable for more than six (6) months or has not been negotiated within ninety (90) days from the date of issuance of the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall revest with the Debtor. Upon such revesting, (i) the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary, and (ii) such Holder shall not be entitled to receive any further distributions on account of the Allowed Claim relating to such Unclaimed Distribution.

*E. Preservation of Causes of Action.*

In accordance with § 1123(b)(3), Debtor will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtor (or any successor), in its sole and absolute discretion, shall have the right to bring, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtor (or any successor), in the exercise of its sole discretion, may pursue such Retained Actions so long as it is in the best interest of Debtor's Estate (or any successor holding such rights of action). Debtor specifically reserves any cause of action against any of Debtor's account debtors related to underpayment or non-payment of any fees or other monies or receivables due. The Plan shall not be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. DebotrDebtor shall retain "Avoidance Actions" under Chapter 5 of the Bankruptcy Code. Net proceeds of any Avoidance Actions, if any, shall be distributed first to priority unsecured creditors following the priority scheme of 11 U.S.C. § 507 and then to non-priority unsecured creditors.

*F. Modification of the Plan.*

The Debtor may modify the Plan subject to the requirements and limitations of section 1193 of the Bankruptcy Code. Consistent with Article VII.AArticle VII.B, the Debtor may modify the Plan to the extent that confirmation pursuant to section 1191(b) of the Bankruptcy Code requires modification.

*G. Default under the Plan; Appropriate Remedies.*

If the Plan has been confirmed under section 1191(a) of the Bankruptcy Code and the Debtor fails to timely perform its obligations under the Plan with respect to one or more Holders

of Allowed Claims then, notwithstanding the injunction set forth in Article VIII.D, such Holders shall be entitled to pursue any rights and remedies that such Holders may have under applicable law, including but not limited to foreclosure of Liens, and bringing an action against the Debtor for breaching its obligations under the Plan and seeking monetary and/or injunctive relief; provided that the Debtor shall have ninety (90) days to cure any default with respect to its obligations to Class 3 before any Holders of Allowed Claims in such Class may be allowed to pursue any rights or remedies that such Holders may have under applicable law.

In addition to the foregoing, if the Plan has been confirmed under section 1191(b) of the Bankruptcy Code, and the Debtor fails to timely perform its obligations under the Plan with respect to one or more Impaired Classes that has not accepted the Plan, then: (i) the Debtor shall have twenty (~~20~~10) days from written notice of such default to cure any monetary default and thirty (30) days from written notice to cure any nonmonetary default with respect to such Impaired Classes; (ii) if the Debtor is unable to cure such default, it shall, no later than forty-five (45) days from the expiration of the time allotted in clause (i), file a modified plan supported by a revised projected disposable income analysis, which plan shall propose treatment of the Impaired Classes consistent with section 1191; and (iii) the Debtor shall move for the Bankruptcy Court to approve the Plan, as modified, after notice and a hearing. If the Debtor fails to comply with this paragraph after failing to perform its obligations under the Plan with respect to one ~~of~~ or more Impaired Classes or fails to obtain a Final Order approving modifications to the Plan that are sufficient to ensure that Holders of Allowed Claims in each Impaired Class are not discriminated against unfairly and receive fair and equitable treatment, then any party in interest may move to convert the Bankruptcy Case to one under chapter 7.

## ARTICLE VIII.
## DISCHARGE OF CLAIMS AND RELEASE

*A. Discharge.*

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of the Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code. The Debtor will not be discharged from any debt imposed by the Plan or to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to section 1141(d)(A) of the Bankruptcy Code and all Administrative Claims upon completion of all payments due during the Plan Term and the Bankruptcy Court's entry of an order of discharge pursuant to section 1192 of the Bankruptcy Code; *provided* that the order of discharge shall not apply to any debt for which the last payment is due after the Plan Term has completed.

*B. Release.*

Upon entry of the order of discharge, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan: (i) each Holder of a Claim

that votes to accept the Plan; and (ii) to the fullest extent permissible under applicable law, each Entity that has held, holds, or may hold a Claim or at any time was a creditor of the Debtor and that does not vote on the Plan or votes to reject the Plan, in each case will be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, rights, Causes of Action, and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan that such Entity has, had or may have against the Debtor, the Estate, and the Debtor's assets.

*C. Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, filing, or termination of the Plan and related transactions, created or entered into since the Petition Date, the pursuit of Confirmation, the pursuit of Substantial Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that constitutes actual fraud, willful misconduct, or gross negligence, but in all respects such Entities may assert the affirmative defense that they reasonably relied upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*D. Injunction.*

Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims are permanently enjoined, to the fullest extent permissible under applicable law, from and after the Effective Date, from taking any of the following actions against the Debtor: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor or its property or assets on account of or in connection with or with respect to such Claims; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property or assets on account of or in connection with or with respect

to such Claims; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or its property or assets on account of or in connection with or with respect to such Claims unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date; and (5) commencing or continuing in any manner any actions or other proceeding of any kind on account of or in connection with or with respect to any such Claim released or settled pursuant to the Plan. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, any and all affirmative defenses of setoff and/or recoupment of Merchants Bank and Change Healthcare are hereby preserved for purposes of future litigation.

## ARTICLE IX.
## GENERAL PROVISIONS

*A. Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1. **"Administrative Claim"** means a Claim for costs and expenses of administration of the Estate under section 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estate and operating the business of the Debtor; and (b) Allowed Professional Fee Claims.

2. **"Allowed"** means, as to a Claim or Interest, proof of which was timely and properly filed or, if no proof of Claim or Interest was filed, which has been or hereafter is listed in the Schedules, as liquidated in an amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (b) an objection has been interposed and such Claim or Interest has been allowed, in whole or in part, by a Final Order and/or by the agreement of the holder of such Claim or Interest. With respect to an Administrative Claim, "Allowed" shall mean any Administrative Claim, or any portion thereof, with respect to which both (a) a timely and proper request for payment has been made to the extent required by the Plan, the Confirmation Order, or by any other order of the Bankruptcy Court, and (b) such Administrative Claim is allowed by the Bankruptcy Court. Allowed Claims shall not include Disputed Claims or Disallowed Claims.

3. **"Avoidance Action"** means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, or 551, of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

4. **"Ballot"** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject the Plan.

5. **"Bankruptcy Case"** means the Debtor's bankruptcy case pending in the Bankruptcy Court, Case No. 26-41044.

6. **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532.

7. **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Minnesota.

8. **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated under section 2075 of title 28 of the United States Code, and the general, local, and chambers rules of the Bankruptcy Court.

9. **"Proof of Claim Bar Date"** means July 16 2026, the deadline for Holders of Claims (other than Governmental Units) to file a Proof of Claim against the Estate in the Bankruptcy Case.

10. **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

11. **"Cash"** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

12. **"Cause of Action"** means any action, claim, cross-claim, third-party claim, cause of action, chose in action, controversy, dispute, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foresee or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

13. **"Claim"** means any claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor.

14. **"Class"** means a class of Claims or Interests as set forth in Article II hereof pursuant to section 1122(a) of the Bankruptcy Code.

15. **"Confirmation"** means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Bankruptcy Case.

16. **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

17. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1191 of the Bankruptcy Code, as such hearing may be continued from time to time.

18. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1191 of the Bankruptcy Code, together with any supplementary exhibits, appendices, and related documents.

19. **"Cure"** means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's default under an Executory Contract or an Unexpired Lease assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

20. **"Debtor"** has the meaning set forth in the preamble to the Plan and shall include the reorganized Debtor after the Effective Date of the Plan, as applicable.

21. **"Disallowed"** means as to a Claim, or any portion thereof, that: (a) has been disallowed or expunged by a Final Order; (b) has been listed by the Debtor in the Schedules in the amount of "$0.00" or as unliquidated in amount, disputed, contingent, or unknown and for which no Proof of Claim has been filed prior to the applicable deadline; or (c) unless otherwise specified herein or by Final Order, any interest, fees, and charges, and any non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or any other claims or obligations that do not compensate for actual losses.

22. **"Disbursing Agent"** means, as applicable, the Debtor or any Entity appointed to make or to facilitate distributions in accordance with the Plan.

23. **"Disposable Income"** shall have the meaning set forth in section 1191(d) of the Bankruptcy Code.

24. **"Disputed"** means as to a Claim, or any portion thereof, that: (a) is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order; (d) if held by an Entity that is a defendant in a pending Avoidance Action, or has failed to pay or turn over property as required by section 502(d) of the Bankruptcy Code; or (e) is otherwise disputed by the Debtor or the Subchapter V Trustee after the Effective Date, in accordance with applicable law.

25. **"Effective Date"** means the date that is the first Business Day: (i) following the date that is fourteen (14) days after the Confirmation Date; or (ii) if a stay of the Confirmation Order is in effect, the first Business Day after the date on which the stay of the Confirmation Order expires or is otherwise terminated. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

26. **"Entity"** means any entity, as defined in section 101(15) of the Bankruptcy Code.

27. **"Estate"** means the estate created for the Debtor in the Bankruptcy Case pursuant to sections 541 and 1186 of the Bankruptcy Code.

28. **"Exculpated Parties"** means, collectively, and in each case in its capacity as such: (i) the Debtor; (ii) the Subchapter V Trustee; and (iii)each current director, manager, officer,

employee, trustee, advisory board member, attorney, accountant, representative, and other professional and advisor who was employed during the Bankruptcy Case with respect to clauses (i) through (iii).

29. **"Executory Contract"** means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

30. **"Final Decree"** means the decree contemplated pursuant to Bankruptcy Rule 3022.

31. **"Final Order"** means an order of judgment of the Bankruptcy Court or other court of competent jurisdiction that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal, seek certiorari, or move for a new trial, stay, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending; or (b) if any appeal, certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired; provided, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule, may be filed relating to such order or judgment, shall not cause such order or judgment not to be a Final Order.

32. **"General Unsecured Claim"** means any Claim that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) a Priority Tax Claim, (d) an Other Priority Claim, or (e) a Claim under Classes 1, 2, and 4.

33. **"Government Bar Date"** means September 28, 2026, the deadline for a Governmental Unit to file a Proof of Claim against the Estate in the Bankruptcy Case.

34. **"Governmental Unit"** means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

35. **"Impaired"** means, with respect to any Class of Claims or Interests, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

36. **"Interests"** means any equity or membership interest in the Debtor, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, any other right to purchase or otherwise receive any ownership interest in the Debtor, or other interest or related right to payment or compensation based upon such interest, existing on or before the Effective Date.

37. **"Lien"** means a lien as defined in section 101(37) of the Bankruptcy Code.

38. **"Liquidation Analysis"** shall have the meaning set forth in Article I.D. The Debtor's Liquidation Analysis is attached to the Plan as **Exhibit A**.

39. **"Person"** has the meaning set forth in section 101(14) of the Bankruptcy Code.

40. **"Petition Date"** means the date on which the Debtor commenced the Bankruptcy Case.

41. **"Plan"** means this plan of reorganization, including all exhibits, supplements, appendices, and schedules, in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

42. **"Plan Term"** means the duration of time from the Effective Date through the ~~third~~ fourth anniversary of the Effective Date.

43. **"Priority Tax Claims"** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, including a Secured Claim of a Governmental Unit which would otherwise meet the description of an unsecured Claim under section 507(a)(8), but for the secured status of the Claim.

44. **"Pro Rata"** means, unless otherwise specified, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

45. **"Proof of Claim"** means a proof of Claim filed against the Debtor in the Bankruptcy Case.

46. **"Professional"** means: (a) an Entity employed pursuant to sections 327, 363, or 1103 of the Bankruptcy Code; (b) the Subchapter V Trustee; and (c) an Entity awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

47. **"Professional Fee Claim"** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, and 503(b) of the Bankruptcy Code.

48. **"Projected Disposable Income"** shall have the meaning set forth in Article I.E.

49. **"Reinstate"** means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

50. **"Retained Action"** means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtor or Debtor's Estate may hold against any Person (including insiders), including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any persons for failure to pay for services provided or rendered by Debtor, (iii) claims and Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, including without limitation, overpayments and refunds, and (iv) all Avoidance Actions.

51. **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, the official

bankruptcy forms, and the Bankruptcy Rules, as they may be supplemented or amended from time to time.

52. **"Secured Claim"** means any Claim that is secured by a valid, perfected and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

53. **"Solicitation"** means that solicitation of votes in connection with the Plan pursuant to section 1126 of the Bankruptcy Code.

54. **"Solicitation Procedures Order"** means the order entered by the Bankruptcy Court setting the date for the Confirmation Hearing, and establishing deadlines for submitting Ballots, objecting to the Plan and the proposed assumption of Executory Contracts and Unexpired Leases, among other relief.

55. **"Subchapter V Trustee"** shall refer to Mary Sieling, appointed pursuant to section 1183(a) of the Bankruptcy Code in the Bankruptcy Case.

56. **"Unclaimed Distribution"** shall have the meaning provided in Article VII.C~~Article VII.E~~.

57. **"Unexpired Lease"** means a lease to which the Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

58. **"Unimpaired"** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

59. **"Voting Deadline"** means the deadline for submitting Ballots established in the Solicitation Procedures Order.

*B. Rules of Interpretation.*

For the purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the

Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) any immaterial effectuating provisions may be interpreted by the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (10) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## ARTICLE X. OTHER PROVISIONS

*A. Acceptance and Rejection of Plan.*

Pursuant to section 1126 of the Bankruptcy Code, an Impaired Class shall have accepted the Plan if (i) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan, and (ii) the Holders of more than one-half (1/2) in number of the Allowed Claims that have timely returned Ballots in such Class have voted to accept the Plan (in both instances, acceptance or rejection by such Holders shall be made in good faith). If necessary and applicable for Confirmation of the Plan, the Debtor reserves the right to request that the Bankruptcy Court address whether the Plan may be deemed accepted or rejected by any Impaired Class for which no Holder has returned a Ballot voting to accept or reject the Plan.

*B. Nonconsensual Confirmation.*

The Bankruptcy Court shall confirm the Plan under section 1191(a) of the Bankruptcy Code if all of the requirements of section 1129(a) of the Bankruptcy Code are met, including, among other things making a finding that all Impaired Classes have voted to accept the Plan.

If one or more Impaired Class votes to reject the Plan, the Bankruptcy Court shall confirm the Plan upon a finding that the Debtor has satisfied the requirements of section 1191(b).

*C. Immediate Binding Effect.*

Upon the occurrence of the Effective Date, the terms of the Plan, and any documents supplemental to the Plan, shall be immediately effective and enforceable and deemed binding upon the Debtor and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity

acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

*D. Retention of Jurisdiction.*

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising out of, and related to, the Plan, the Confirmation Order, and the Bankruptcy Case to the fullest extent permitted by law, including but not limited to: (i) determining the allowance of compensation and expenses of Professionals; (ii) hearing and deciding any and all adversary proceedings, applications, and contested matters; (iii) determining issues or disputes relating to the assumption of Executory Contracts and Unexpired Leases and any claims related thereto; (iv) determining disputes as to classification or allowance of Claims or Interests; (v) resolving any dispute between or among any of the parties to the Bankruptcy Case; (vi) ruling on any modification of the Plan proposed under section 1193; (vii) determining other such matters as may be set forth in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; (viii) entering a final decree closing the Bankruptcy Case; (ix) correcting any defect, cure any omission or reconciling any inconsistency in this Plan or Confirmation Order; and (x) issuing such orders or injunctions as may be necessary to execute, implement, or consummate the Plan, or taking such other actions as may be necessary to restrain interference by any Entity with consummation or enforcement of the Plan.

*E. Entire Agreement and Non-severability.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtor or, prior to the termination of his services, the Subchapter V Trustee's consent; and (ii) non-severable and mutually dependent.

*F. Effect of Non-occurrence of Effective Date.*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims by or against

the Debtor; or (ii) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgment, offer or undertaking by the Debtor.

*G. Governing Law.*

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to conflict-of-laws principles.

*H. Tax Consequences.*

The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto. There can be no assurance that the Internal Revenue Service or any state or local taxing authorities will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

FOR THE FOREGOING REASONS, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE, AND LOCAL) TO THEM OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR EQUITY HOLDER, NOR IS THE DEBTOR RENDERING ANY FORM OR LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.

*I. Reservation of Rights.*

The Debtor reserves the right to, among other things: (i) contest the right of the Holder of any Claim to vote on the Plan, or designate the vote of the Holder of any Claim; (ii) contest the right of the Holder of any Claim to receive distributions under the Plan; (iii) contest the validity of a creditor's Lien or security interest; (iv) seek to subordinate any Claim for inequitable conduct or otherwise; and (v) to pre-pay all or a portion of an Allowed Claim. Except as otherwise provided, no assets shall be deemed abandoned and no defense, set-off, counterclaim, or right of recoupment of the Debtor shall be deemed waived, released, or compromised.

*J. Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor, or any other Entity, if such agreement was not disclosed in the Plan or any documents supplementary to the Plan prior to the Confirmation Date.

*K. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, success or assign, affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

Senior Home Health Care, LLC

Dated: ~~July~~ September __~~7~~, 2026

By: */s/ Jeylani Hashi*___________
Name: Jeylani Hashi
Title: Manager

**EXHIBIT A**

**LIQUIDATION ANALYSIS**

**EXHIBIT B**

**FINANCIAL PROJECTIONS**

**EXHIBIT C**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED**

| Contract | Counter-Party | Cure Amount | Date of Payment |
|---|---|---|---|
| Commercial Lease | Metro Parkway Associates, LLP | $0.00 | N/A |
| Commercial Lease | Miracle Mile LLC | $0.00 | N/A |
| Subscription for Electronic Medical Record Services | NetSmart, Inc. | $14,293.16 | Fifteen (15) days after the Effective Date |

**EXHIBIT D**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED**

Commercial Lease with Northstar Properties of Saint Cloud, LLC